PENNOCK v. TEXAS BUILDERS' SUPPLY CO. (No. 165.)

(Court of Civil Appeals of Texas. Beaumont. March 15, 1917.)

1. PRINCIPAL AND SURETY ⬦155—RELATION —PETITION.

A petition, alleging that a corporation executed its notes to plaintiff, and that before delivery an individual defendant became a surety thereon by writing his name across the back of them, that when the notes were made the corporation owed plaintiff for goods, and that it was threatening to take measures for collection, and that the individual defendant caused the company to execute such notes, and, on plaintiff's refusal to accept them unless better secured, offered to and did indorse them, was sufficient to show that defendant was a surety.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 422.]

2. PRINCIPAL AND SURETY ⬦155—CONSIDERATION—PETITION.

Such allegations were sufficient to show a consideration passing to defendant for his signature to the notes.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 422.]

3. PRINCIPAL AND SURETY ⬦155—FAILURE TO SUE PRINCIPAL—PLEADING.

In such action, it was not necessary to allege that the corporation principal was insol-

vent at the institution of the suit, nor to allege any reason or excuse for failure to sue it at the first or second term of court after the notes matured.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 422.]

4. PRINCIPAL AND SURETY ⬤⟿45—CONSIDERA-TION—SUFFICIENCY OF EVIDENCE.

In an action on notes signed by a corporation and indorsed by defendant evidence as a surety, held to support finding that plaintiff did not accept the notes when first tendered to it, and that defendant's signature, made thereafter to induce acceptance, was not a subsequent, separate, and entirely distinct transaction from the original execution and delivery, so as to require a new consideration.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 22.]

5. MALICIOUS PROSECUTION ⬤⟿64(2)—GOOD FAITH—SUFFICIENCY OF EVIDENCE.

In an action on the notes of a corporation alleging the individual defendant to be a surety thereon, evidence held to support a finding that the issuance and levy of an attachment on his safe was made in good faith.

[Ed. Note.—For other cases, see Malicious Prosecution, Cent. Dig. § 152.]

6. APPEAL AND ERROR ⬤⟿1033(8)—FAVORA-BLE ERROR—DAMAGES.

In an action upon notes of a corporation on which the individual defendant was surety, he could not complain of a finding awarding him $20 for the levy and attachment of his safe, where such damages had no basis in the testimony, and where there was no complaint, and the matter of the absence of testimony on that issue was not properly called to the attention of the court of civil appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4060.]

7. DAMAGES ⬤⟿95—ACTUAL DAMAGES—PUR-POSE.

The purpose of the law in awarding actual damages is to repair the wrong done and compensate for injury inflicted, but not to impose a penalty, and any method affording the injured party more than a just and reasonable compensation is not the correct measure of damages, whether the injury be the result of a willful wrong or an honest mistake.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 222–229.]

8. DAMAGES ⬤⟿91(2)—EXEMPLARY DAMAGES.

Where an act has been done in good faith although it may result in serious injury to the defendant, there can be no recovery of exemplary damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 199.]

9. APPEAL AND ERROR ⬤⟿1151(1)—DETERMI-NATION OF CAUSE—INTEREST—CALCULATION.

In an action on notes brought against the surety where the court found that plaintiff would be entitled to recover the face amount of the notes, including interest and attorneys' fees less a credit, or the aggregate sum of $229.04, with interest at 8 per cent. from the date of the judgment, an unintentional error in the calculation of interest would be corrected on appeal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4499–4505.]

Appeal from Jefferson County Court, at Law; D. P. Wheat, Judge.

Action by the Texas Builders' Supply Company against O. H. Pennock, Junior, with writ of attachment, in which defendant brought a cross-action. Judgment for plaintiff with allowance on cross-action, and defendant appeals. Affirmed.

John W. Mackey, of Beaumont, for appellant. M. M. Mothner, of Beaumont, for appellee.

BROOKE, J. Appellee, Texas Builders' Supply Company, on March 11, 1915, sued appellant, and for cause of action alleged that Pennock Improvement Company, a corporation, executed two notes to appellee, due March 18 and March 10, 1914, respectively, and upon which appellant, O. H. Pennock, was a surety; that Pennock Improvement Company was not made a party, it having been adjudged to be a bankrupt before the institution of this suit. The suit was tried before the court without a jury, and resulted in a judgment against appellant for $229.04. On the same day of the institution of this suit, appellee caused a writ of attachment to be sued out and levied upon an iron safe owned by appellant and used by him in the conduct of real estate and insurance business. Upon a trial of the whole case, the court found that the safe was exempt property; that the levy of the writ of attachment thereon was wrongful; and gave judgment against appellee and sureties upon appellant's cross-action for actual damages in the sum of $20, with costs of the attachment proceeding. The appellant, in due time, perfected his appeal to this court. Counsel on either side could not agree upon a statement of facts. Therefore separate statements of fact were filed by each, and the court, as required by law, filed its statement of facts on May 20, 1916, and the same became a part of the record in this cause. Upon request, the court filed its findings of fact and conclusions of law, as follows:

"Findings of Fact.

"First. I find that on the 5th day of August, A. D. 1913, the Pennock Improvement Company, a corporation, was indebted to the plaintiff, Texas Builders' Supply Company, in the sum of $237.10, for certain building materials sold and delivered to it theretofore at the special instance and request of the said defendant, O. H. Pennock, Jr., to which said O. H. Pennock, Jr., the said Texas Builders' Supply Company looked to, and it was so understood and agreed by the said Texas Builders' Supply Company, and the said O. H. Pennock, Jr., jointly with said Pennock Improvement Company, for payment thereof, and charged the said Pennock Improvement Company therewith wholly as an accommodation to the said O. H. Pennock, Jr., the said O. H. Pennock, Jr., being advised by the said plaintiff, and its agent, T. E. Danziger, that the Texas Builders' Supply Company did not know that Pennock Improvement Company, meaning that no credit could be extended to it, but that such account would be charged to the said Pennock Improvement Company, solely as an accommodation to the said O. H. Pennock, Jr., but that it was understood that the said O. H. Pennock, Jr., should be jointly responsible with such Pen-

⬤⟿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

nock Improvement Company for the payment of such account; that the said O. H. Pennock, Jr., was at such time during the various times that the items comprising such account were purchased—the secretary and treasurer of the Pennock Improvement Company, the said T. E. Danziger with whom all dealings were had by the said O. H. Pennock, Jr., and the Pennock Improvement Company with reference to the matters in controversy here was and is the secretary and treasurer of the said Texas Builders' Supply Company, plaintiff.

"Second. I find that on the 18th day of September, A. D. 1913, the Pennock Improvement Company was without sufficient available capital and credit to liquidate the account aforesaid, at which time said account was long past due and unpaid, and at such time and prior thereto the said, Texas Builders' Supply Company by and through its said T. E. Danziger was pressing the said O. H. Pennock, Jr., and the Pennock Improvement Company, for such payment and liquidation of such account, and was threatening to institute suit and take vigorous measures towards bringing about such liquidation and payment of such account, and fully intended so to do, and would have done so, but for the action of the said O. H. Pennock, Jr., as hereinafter indicated.

"Third. I find that on the said 5th day of August, A. D. 1913, plaintiff, Texas Builders' Supply Company, by and through its said T. E. Danziger, directed to the said O. H. Pennock, Jr., the following letter: 'Herewith statement of Pennock Improvement Company, showing amount due us of $241.70. As you are aware, the above has been carried on our books from month to month for a long period and without interest and we have been satisfied to accommodate you all possible, however, we find that now we need these funds and would thank you to let us have either your check or a short time note by return mail if possible and oblige. Yours truly, Texas Builders' Supply Co., [Signed] T. E. Danziger, Secy.'

"I find that the account mentioned in said letter was the one for which the notes in controversy were given, and that the said O. H. Pennock, Jr., was being requested therein to close such account with either his personal check, or his personal short time note, that it was not intended, and that the said O. H. Pennock did not so understand, that the check of the Pennock Improvement Company, nor a note of such Pennock Improvement, was being requested.

"Fourth. I find that all the matters and things relative to the account and indebtedness above mentioned were transacted by and between the said O. H. Pennock, Jr., acting for himself, and the said Pennock Improvement Company, and the said T. E. Danziger, acting for the Texas Builders' Supply Company, and that the said account was charged to the Pennock Improvement Company as an accommodation to the said O. H. Pennock, Jr., but that the Texas Builders' Supply Company looked to the said O. H. Pennock, Jr., and the Pennock Improvement Company, jointly and severally, for payment thereof, and that such was the understanding by and between said Texas Builders' Supply Company and the said Pennock Improvement Company and the said O. H. Pennock, Jr.

"Fifth. I find that during the months of August and September, A. D. 1913, the said Texas Builders' Supply Company, by and through its said T. E. Danziger, was pressing, insisting, and calling upon the said O. H. Pennock, Jr., for settlement and liquidation of said account, and demanding of the said O. H. Pennock, Jr., payment thereof.

"Sixth. I find that on the 18th day of September, A. D. 1913, the said O. H. Pennock, Jr., in response to the pressure and urgent requests of the said Texas Builders' Supply Company,

by and through its said T. E. Danziger, made and executed, for and in behalf of the Pennock Improvement Company, two certain promissory notes of the following tenor, reading, and effect: "'$137.10. Sept. 18, 1913. Six months after date for value received —— promise to pay to the order of Texas Builders' Supply Company, one hundred thirty-seven & 10/100 dollars, at Beaumont, Texas, with interest after date at the rate of eight per cent. per annum, and if not paid at maturity and collected by an attorney or by legal proceedings an additional sum of ten per cent. on the amount of this note as attorney's fees. The Pennock Improvement Co., by O. H. Pennock, Jr., Secy. & Treas. No. ——. Due ——.'

"'$100. Dec. 20, 1913. Ninety days after date for value received, we promise to pay to the order of Texas Builders' Supply Company one hundred & no/100 dollars, at Beaumont, Texas, with interest after date at the rate of eight per cent. per annum and if not paid at maturity and collected by an attorney or by legal proceedings, an additional sum of ten per cent. on the amount of this note as attorney's fees. The Pennock Improvement Company, by O. H. Pennock, Jr., Secy. & Treas. No. 34. Due ——.'

"I find that said notes though dated on the 18th day of September, A. D. 1913, and the 20th day of December, A. D. 1913, respectively, were both made and executed on the 18th day of September, A. D. 1913.

"Seventh. I find that on the 18th day of September, A. D. 1913, the said O. H. Pennock, Jr., delivered in person at the office of the Texas Builders' Supply Company, at Beaumont, Tex., the said notes above mentioned, unto the hands of one Mr. De Young, then president of said Texas Builders' Supply Company, who at such time notified and advised said O. H. Pennock, Jr., that T. E. Danziger was out of the office; that he, the said De Young would hand such notes to the said T. E. Danziger for attention upon his return; that the said T. E. Danziger returned to the office of the said Texas Builders' Supply Company and was immediately notified by the said De Young of said notes, whereupon the said Danziger, after examining same, expressed his dissatisfaction therewith and then and there telephoned the said O. H. Pennock, and in the course of said conversation advised said Pennock that such notes were unsatisfactory, not of the kind contemplated, and could not be accepted. I find that said De Young, in receiving said notes from the hands of said Pennock, did not intend same to constitute an acceptance thereof, in satisfaction of the abovementioned indebtedness, and that the said O. H. Pennock, Jr., understood that the reception of said notes on the part of said De Young was not such acceptance, but that such acceptance was dependent upon the future action of the then absent T. E. Danziger.

"Eighth. That on the following day and pursuant to the aforementioned 'phone conversation, said T. E. Danziger called upon the said O. H. Pennock, Jr., at the office of the said Pennock Improvement Company, and returned said notes to the said O. H. Pennock, Jr., then and there again advising the said O. H. Pennock, Jr., that said notes were unsatisfactory and would not be accepted, and further suggested that if the said O. H. Pennock, Jr., would indorse said notes as surety, that they would then be acceptable and satisfactory; that the said O. H. Pennock, Jr., then indorsed his name on the back of said notes, and retendered same to the said Danziger, who accepted same in satisfaction and settlement of the aforementioned account.

"Ninth. I find that said T. E. Danziger, kept all books and had exclusive charge of all financial matters of and pertaining to the business of the said Texas Builders' Supply Company, and in particular to the matters involved in this

suit, a fact well known and understood by the said O. H. Pennock, Jr.

"Tenth. I find that said Pennock Improvement Company was insolvent and adjudicated bankrupt during the month of February, 1915.

"Eleventh. I find that the said O. H. Pennock, Jr., failed to instruct in writing the said Texas Builders' Supply Company to institute suit, or take measures to enforce the collection of said notes and failed so to do during the period of solvency of said Pennock Improvement Company and at the maturity of said notes, either or both.

"Twelfth. I find that on the 11th day of March, A. D. 1915, the Texas Builders' Supply Company instituted this suit and caused a writ of attachment to be issued out of this court and levied upon one Diebold safe, same being the office safe of the said O. H. Pennock, Jr., with the name of the said O. H. Pennock, Jr., thereon, which said safe was, however, not taken from, but left in the possession of the said O. H. Pennock, Jr.; it being the understanding by and between O. H. Pennock, Jr., and the officer making such levy, that the said O. H. Pennock, Jr., would safely and securely keep same subject to the further orders of this court.

"Thirteenth. I find that at the time such safe was levied upon, and left in the possession of said O. H. Pennock, Jr., the said Pennock was engaged in the insurance and real estate business at Beaumont, Tex., and that it was being used by him for the purpose of keeping and storing papers and valuables connected with his said business and occupation and trade.

"Fourteenth. I find that the said O. H. Pennock, Jr., after the safe was levied upon, removed the contents thereof and discontinued the use of same for a period of ten days.

"Fifteenth. I find that the reasonable value of the use of said safe during such period of ten days to aggregate the sum of twenty & no/100 dollars ($20.00).

"Sixteenth. I find: That on the 29th day of February, 1915, the said O. H. Pennock, Jr., purchased a metal fireproof safe, commodious and specially arranged on the inside to accommodate his business and at the time of such purchase contemplated selling or disposing of the safe levied upon as aforesaid, and did on the 3d day of March, 1915, cause to be inserted in the Beaumont Enterprise, a newspaper published at Beaumont, Tex., the following advertisement, wherein said safe was by him offered for sale, to wit: 'For sale—At a bargain; one fireproof Diebold safe; 3x2½ outside measurement; 3½ feet high; double door. O. H. Pennock, 550 Keith Bldg. 3–3–tfc.' That said advertisement was run in said newspaper up to and including the 12th day of March, 1915, for which the said O. H. Pennock, Jr., paid the Beaumont Enterprise the sum of one & ⁷⁵/₁₀₀ ($1.75) dollars.

"Seventeenth. I find that the said O. H. Pennock, Jr., concluded to withdraw said safe from the market and from sale, about the 14th day of March, 1915.

"Eighteenth. I find that the said Texas Builders' Supply Company was not actuated by malice in causing such attachment to be levied, and that the said O. H. Pennock, Jr., suffered but ten days' inconvenience and no embarrassment or humiliation.

"Nineteenth. I find that on the day prior to the levy of such execution, and in response to such advertisement aforesaid, said Texas Builders' Supply Company, by and through its agent, one William Ferringer, called at the office of the said O. H. Pennock, Jr., and inquired of and from Sug Du Perier, the agent and employé of the said O. H. Pennock, Jr., then in charge of the office and business of the said O. H. Pennock, Jr., and in particular charge of the safe and with full and complete authority to make sale of the safe levied upon herein, whether or not said safe was for sale, the amount of money asked therefor, whether or not title could be delivered free of incumbrances, whose property it was, and the reasons for selling same, to which the said Du Perier replied that the safe levied upon was the one being offered for sale; that the price was $75; that the title free from incumbrances would be then delivered; that the reasons for selling same was that the said O. H. Pennock, Jr., had recently purchased another safe, which said other safe was then pointed out to the said Ferringer; and that the said O. H. Pennock, Jr., had and would have no further use for the safe levied upon. I further find that R. M. Mothner and T. E. Danziger are sureties on the attachment bond of plaintiff.

### "Conclusions of Law.

"First. I conclude that the notes involved in this controversy were not binding upon either parties until accepted by the Texas Builders' Supply Company, and that the transaction was executory and incomplete until such acceptance, and that delivery of same was not made in the sense of completing an executed and binding contract until such notes were accepted by the said Texas Builders' Supply Company.

"Second. I conclude that said notes were delivered to and accepted by the Texas Builders' Supply Company when placed in the hands of T. E. Danziger by O. H. Pennock, Jr., and after the name of the said O. H. Pennock, Jr., had been duly indorsed thereon.

"Third. I conclude that the effect of such indorsement by the said O. H. Pennock, Jr., bound him as surety on such notes, and that the intention of all the parties concerned at such time was that he be so bound.

"Fourth. I conclude that there was a good, valuable, and sufficient consideration, passing to the said O. H. Pennock, Jr., for his indorsement on said notes and to bind him thereon as surety.

"Fifth. I conclude that the said O. H. Pennock, Jr.'s, responsibility being that of surety and not indorser, it was unnecessary to allege or prove that the said Pennock Improvement Company was insolvent at the maturity of said notes, either or both.

"Sixth. I conclude that it was unnecessary for the Texas Builders' Supply Company to institute suit on said notes or either of same, at the first or second term of this court, after maturity, against the said O. H. Pennock, Jr., because his responsibility on such notes was that of surety.

"Seventh. I conclude that it was the duty of O. H. Pennock, Jr., to notify in writing in full and explicit terms the Texas Builders' Supply Company to sue the said Pennock Improvement Company during its period of solvency, and a failure of the Texas Builders' Supply Company so to do, in the absence of such written notice, did not release the said O. H. Pennock from liability on said notes.

"Eighth. I conclude, in any event, that the plaintiff, Texas Builders' Supply Company, would be entitled to recover of and from the said defendant, O. H. Pennock, Jr., the face amount of said notes, including interest and attorney's fee, less the credit of $50, or the aggregate sum of $229.04, with interest thereon at the rate of 8 per cent. per annum from the date of judgment herein and its costs in such behalf expended.

"Ninth. I conclude that the office safe of the said O. H. Pennock, Jr., levied upon in this suit, was exempt from attachment at the time of such levy, and further that such levy was void and ineffective because the officer making same only took constructive possession of such safe; actual possession thereof not having been taken by such officer.

"Tenth. I conclude that such attachment was

issued and caused to be levied by the plaintiff, Texas Builders' Supply Company, in good faith, and that the defendant, O. H. Pennock, though entitled to recover on his cross-action from the plaintiff, Texas Builders' Supply Company, and sureties on attachment bond, to wit, R. M. Mothner and T. E. Danziger in the sum of $20, and costs in such behalf incurred for such void levy of attachment; that he is not entitled to exemplary damages, the levy having been made in faith, and upon the belief by the Texas Builders' Supply Company, its agents and employés, that such safe had been abandoned for the purposes for which the law exempts it and because plaintiff was not actuated by malice in making such levy. D. P. Wheat,

"Judge of the County Court of Jefferson County, at Law."

We are confronted at the outset with a motion that appellant's assignments of error be not considered, for the following reasons: The first and second assignments are not followed by a proper statement; the third assignment refers to the last foregoing statement, and there is no foregoing statement; that the fourth assignment has no proposition or statement; that the fifth assignment has no statement; that the sixth has under it, while called a statement, an argument; that the seventh assignment has no statement; that the eighth assignment has no statement; that the ninth assignment has neither proposition nor statement; that the tenth assignment has no statement; neither has the eleventh, the twelfth, the thirteenth, nor the fourteenth assignments of error. In other words, that these assignments should not be considered, because not briefed in accordance with the rules.

In the case of Ford Motor Car Co. v. Freeman et al., 168 S. W. 81, the court uses this language:

"The consideration of this assignment is objected to by appellees on the ground that it is not briefed in accordance with the rules. This objection is well taken. A proposition without a sufficient statement cannot, under the rules and laws of this state, be considered; and a statement which fails to show that objection was made to a charge given and complained of by appeal, and particularly one which fails to refer to a bill of exception, where a bill is required to preserve the point, giving the number of the bill or page where it can be found in the record, is insufficient. (Citing Ferguson v. Fain, 164 S. W. 1040; Stephenson v. Luttrell, 160 S. W. 666.)"

Continuing, the court says:

" 'No reference is made to a bill of exceptions in the twenty-third assignment of error, nor in the propositions and statement thereunder; and this court assumed, as it had a right to do, that there was no bill of exceptions. It is under no obligation to search through the statement of facts or other parts of the record to find bills of exception.' As in the cases cited, no reference is made to a bill of exception in the assignment under consideration, nor in the proposition and statement thereunder. The assignment is not, therefore, entitled to consideration."

The brief in the instant case is far from being free from the objections urged. In fact, we shall be compelled hereafter to require that cases be briefed in accordance with the rules. However, we shall not refuse in this case to consider the assignments.

The first and second assignments are as follows:

(a) "The court erred in overruling defendant's general demurrer to the original and supplemental petitions of plaintiff, for the reasons that: (a) Said petitions do not state such facts as would make the defendant in law a surety on the notes sued on; (b) said petitions do not show that there was any consideration passing to defendant for his signature on said notes; (c) that said petitions wholly fail to allege that the Pennock Improvement Company, maker of said notes, was insolvent at the time of the maturity thereof; and (d) that said petitions fail to allege any reason or excuse for the failure to sue defendant to the first or second term of court after said notes matured."

(b) "The court erred in paragraph one of its findings of fact, and the conclusion of law and judgment based thereon, to the effect that the defendant was originally or became jointly bound or liable for the payment of the account of the Pennock Improvement Company, and that 'it was understood that the said O. H. Pennock, Jr., should be jointly liable for the payment of such account,' because such finding and conclusion are not supported by the pleadings or the evidence and are contrary to the law."

[1-3] We have carefully considered these assignments, and we are of opinion that the petitions of appellee do state such facts as would make the appellant a surety on the notes sued on. The allegations of the original petition show:

"That on the 18th day of September, A. D. 1913, the Pennock Improvement Company, a corporation, * * * made, executed, and delivered to plaintiff its certain promissory note for the sum of $137.10."

And the same averment is made concerning the note for $100, and it further alleged:

"That on the day and date of said note aforesaid, and prior to the delivery thereof to plaintiff, the defendant, O. H. Pennock, Jr., became a surety thereon by writing his name across the back of same, and did then and there by such indorsement bind and obligate himself to pay such note according to its face, tenor, reading, and effect."

And it is further alleged:

"That at the time the said notes mentioned in plaintiff's said original petition were made, executed, and delivered to the said plaintiff, and at the time the said O. H. Pennock, Jr., wrote his name across the back of same, thereby becoming a surety, that the defendant, Pennock Improvement Company, owed the plaintiff an account for goods, wares, and merchandise furnished it, aggregating the amount of both of said notes, which said account was then and there long past due and unpaid, and said plaintiff was at such time, to wit, the days and dates upon which the said notes were made, executed, and delivered and the said O. H. Pennock placed his name across the back of same, pressing and insisting upon immediate settlement and was threatening to take such measures as would be calculated to bring about an adjustment, satisfaction, and liquidation of said account, and in order that the situation be relieved, the said O. H. Pennock offered and did pursuant thereto cause the said defendant, Pennock Improvement Company, to make and execute the notes as aforesaid. That the tender of such notes was by plaintiff refused until same were better secured, whereupon defendant, O. H. Pennock, Jr., then offered to and did

place his name on the backs of each of said notes, and plaintiff then accepted same."

In other words, the allegations in the petition are sufficient to show that appellant was a surety, that there was a consideration passing to appellant for his signature, and we do not believe, while it was fully shown that the Pennock Improvement Company was insolvent at the institution of the suit, that the same was necessary to be alleged, neither are we of the opinion that it was necessary to allege any reason or excuse for failure to sue the appellant at the first or second term of court after the notes matured. The findings of the court show, and there is evidence to support the said findings, that it was understood between the parties that the appellant was to be jointly liable for the payment of the account. In fact, the testimony leads to the conclusion that credit was given alone and reliance was had upon the promise of appellant. The assignments are therefore overruled.

The third and fourth assignments of error are as follows:

(a) "The court erred in his findings of fact numbered 2, 3, 4 and 5, and the conclusions of law and judgment based thereon, which was in effect that the forbearance of suit on an account due plaintiff by the Pennock Improvement Company was a valuable or sufficient consideration for the notes executed by the defendant."

(b) "The court erred in paragraph 4 of his findings of fact and the conclusion of law based thereon, to the effect that, in his transactions with plaintiff, the defendant 'was acting for himself' individually, because such finding and conclusion are not supported by the evidence and are contrary to the law."

We have examined the record, and cannot agree with the contentions of appellant. These assignments are therefore overruled.

[4] The fifth and sixth assignments of error are as follows:

(a) "The court erred in paragraph 7 of his findings of fact, to the effect that the delivery of said notes by the Pennock Improvement Company to Geo. C. De Young, president of the plaintiff company, with the information that same were delivered in settlement of the account of the Pennock Improvement Company, and the retaining of said notes without protest or objection by the said De Young, president, did not constitute a completed transaction; and the court further erred in refusing to find that the delivery of said notes to plaintiff's president was a delivery to plaintiff, and that plaintiff was estopped to deny that it was bound by the acts of its president."

(b) "The court further erred in paragraph 7 of his findings of fact, in refusing to find therein that plaintiff's request for defendant's personal signature on said notes, and the defendant's signing of same, was a subsequent separate and entirely distinct transaction from the execution and delivery of said notes by the Pennock Improvement Company."

The testimony shows that on August 5, 1913, appellee made demand upon the defendant for the payment of the notes, and offered to accept the appellant's short time note in settlement thereof. On September 18, 1913, in response to letters and other pressure, appellant was informed that no credit had been given the Pennock Improvement Company, but the credit had been extended to Pennock, individually, and that the notes of Pennock Improvement Company would not be accepted, and that thereupon the appellant placed his name upon the said notes, with the distinct understanding that he was a surety upon the same for their payment. We see no merit in the above assignments, and they are therefore overruled.

Appellant's seventh assignment complains of the finding of the court that defendant was liable as a surety or copromisor on the notes, "because the pleadings of the plaintiff, and the uncontradicted evidence, show that the debt for which they were given was a pre-existing debt due by a corporation of which defendant was merely a shareholder, that there was no prior agreement that defendant was to become surety for said debt, and that there was no consideration paid him for his signature to said notes or either of them; wherefore at the time of signing of said notes by defendant, the consideration therefor had been fully executed, and the finding and judgment of the court were contrary to the law."

The eighth assignment is:

"That the court erred in his finding and judgment in holding the defendant to be liable as a surety on said notes, because it having been shown by the pleadings of plaintiff and defendant, and by the testimony, that the notes sued on were executed by the Pennock Improvement Company, a corporation, in consideration of a debt due by it alone to plaintiff, and delivered by it in the office of plaintiff to its president, Geo. C. De Young, that the said De Young, president, received and retained the said notes bearing only the signature of Pennock Improvement Company, the maker thereof, without objection or protest, and without intimation that defendant's signature thereon was expected or would be demanded, and that on a day thereafter the said notes were presented by plaintiff to defendant with request that he indorse his name thereon, and that he did so; wherefore the court erred in his refusal to find that the defendant thereby became merely an accommodation indorser of said notes without consideration and for the benefit of plaintiff alone, and that he was released from liability thereon by reason of plaintiff's failure to sue to the first term or the second term of court after the maturity thereof."

We have carefully examined the record, and, without quoting from the pleadings or from the testimony, we are of opinion that these two assignments are without merit, and therefore they are overruled.

The matters called to our attention by the ninth and tenth assignments seem to be the same as those under their first assignment, and therefore, without unduly burdening this record, we simply say that we find no merit in the contentions, and they are therefore overruled.

[5] By the eleventh assignment of error it is complained that:

"The court erred in his refusal to find for defendant on his cross-action that the writ of attachment was issued without probable cause because plaintiff, as the basis for the issuance of the writ of attachment, having made affi-

davit that 'said O. H. Pennock, Jr., defendant in said cause, is about to convert his property and a part thereof into money, for the purpose of placing it beyond the reach of his creditors,' and having introduced no evidence in support of said allegation, except to the effect that the office safe, which is exempt from execution and attachment, was, prior to said attachment, being advertised for sale, and the sale or threatened sale of exempt property constituting no ground for attachment, and the defendant having shown by competent evidence that the allegations of said affidavit were untrue, and the plaintiff having failed to show that it had reason to believe that the grounds alleged did in fact exist, the finding of the court and the conclusion thereon that the issuance and levy of such attachment were made in good faith was contrary to the law and the evidence."

We have examined the findings of the court, as complained of above, and do not see that any error was committed by the trial court in the matter complained of. The assignment is therefore overruled.

[6] The twelfth and thirteenth and fourteen assignments of error are as follows:

(a) "The court erred in his finding of fact paragraph 15, and the judgment based thereon, to the effect that the value of the use of said safe during the period of ten days held under attachment is only the sum of $20, because said finding and judgment are not supported by the evidence; the only evidence on that subject being that of the defendant himself, who testified that the use of the safe was of the value of $10 per day. Wherefore said finding and judgment do not conform to the proof."

(b) "Having found that the writ of attachment was levied upon an office safe owned and used by an insurance and real estate agent in the conduct of his business, that the said safe was, under the law, exempt property, that the levy of the writ of attachment thereon was wrongful, and that defendant is entitled to damages for such wrongful levy, the court erred in his refusal to award defendant exemplary damages as prayed for in his cross-action."

(c) "It having been shown by a preponderance of the evidence that the writ of attachment herein sued out was without probable cause, that said writ was, by express direction of plaintiff, levied upon exempt property, and the court having found that such levy was illegal and wrongful, the court erred in refusing to hold that such wrongful issuance and levy was malicious per se, and that by reason thereof defendant is entitled to both actual and exemplary damages on his cross-action."

As to the twelfth assignment, the evidence as to the appellant's actual damage for the alleged wrongful levy of the attachment writ, and the awarding appellant $20 as damages, it occurs to us is not a matter about which appellant can be heard to complain, as having no basis in the testimony. It is true that appellant testified that the damage inflicted upon him was $10 per day during the ten days in which the attachment was in force; but the fact in evidence showing that the safe was being advertised for sale for the sum of $70, it seems to us, would reflect the conclusion that it would be inequitable and unjust to pay the appellant $100 for the detention under the attachment writ, for ten days, property which he was offering to sell and part with the complete title thereto forever for the sum of $70. We believe from the testimony in this case, which shows that

appellant had already purchased another safe in which to store his records prior to the time that he had offered the safe which was levied on for sale, and that while appellant said in his testimony that he was damaged by the nonuse of same $10 per day, there is no fact in his testimony upon which could be based such a conclusion. Nothing was said by him upon which a court or jury could actually estimate the actual damages inflicted upon the appellant by reason of the nonuse of the safe for ten days; and as said before, there being no testimony whatever in the record, the appellant, in our opinion, should not be heard to complain that the $20 allowed by the court as damage to the appellant for the detention of the safe during ten days is inadequate. However, there is no complaint, nor has the matter been properly called to the attention of this court by the appellee with reference to there being no testimony on the issue; and, the court having found $20 as damages, we are of opinion that appellant should not be heard to complain.

[7, 8] "The purpose of the law, in awarding actual damages, is to repair the wrong that has been done to compensate for the injury inflicted but not to impose a penalty. Any method that will afford the injured party more than just and reasonable compensation is not the correct measure of actual damages, whether the injury be the result of a willful wrong or an honest mistake." With reference to exemplary damages, it may be well to say that:

"Where an act has been done in good faith, although it may result in serious injury to the defendant, there can be no recovery of exemplary damages."

It was shown by the evidence, and so found by the court, that appellee's claim was fair and just, and that there was no malice in the suing out of said writ of attachment. The facts also are undisputed that the officer at no time took the safe in his actual possession, but left it with the defendant, under agreement to be held subject to further order of the court, and that there was nothing said or done that would have led the defendant, appellant here, to believe other than that the safe was to remain in his possession until the trial of the case.

[9] It is urged that the note for $137.10, dated September 18, 1913, drawing interest at the rate of 8 per cent. per annum, was without payment until June 10, 1914, when $50 was paid. It is further urged that interest on June 10, 1914, a period of eight months and twenty-two days, aggregated $7.90; that of this $50 but $42.10 should be applied to the principal, reducing it to $95; that interest on $95 from June 10, 1914, to March 22, 1916, the date of the judgment, a period of one year, nine months, and two days, aggregated $13.34; that the principal and interest combined made $108.34; that the additional 10 per cent. attorney's fee brought the total to

$119.17. It is further alleged that the note of September 18, 1913, for $100, with interest at 8 per cent., on March 22, 1916, which was the date of the judgment, remained unpaid for a period of two years, three months, and two days, the principal, interest, and attorney's fees, aggregating $129.84, and that the amount of the judgment should have been, if properly calculated, the sum of $249.01.

We are of opinion that the contention of appellee is right, and that it was an error committed by the trial court unintentionally, for in the eighth conclusion of law the court says that:

"The Texas Builders' Supply Company would be entitled to recover of and from the said defendant, O. H. Pennock, Jr., the face amount of said notes, including interest and attorney's fee, less the credit of $50, or the aggregate sum of $229.04, with interest thereon at the rate of 8 per cent. per annum from the date of judgment herein, and its costs in such behalf expended."

Therefore the error was an error of calculation on the part of the trial court, and was an unintentional error in calculation.

Believing as we do that the appellant had a fair and impartial trial, and that his rights have been carefully guarded, and finding no error save that of calculation in the action of the trial court, the remaining assignments of appellant are overruled, and judgment is here and now entered for appellee in the sum of $249.01, to bear interest from the date of the judgment of the trial court at 8 per cent. per annum; and, as so reformed, the judgment in this cause is in all things affirmed.