GALVESTON, H. & S. A. RY. CO. et al. v. WURZBACH. (No. 6313.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 31, 1919. On motion for Rehearing, Feb. 18, 1920.)

1. RAILROADS ⬳5½, New, vol. 6A Key-No. Series—CARRIER SUED FOR WRONG COMMITTED DURING FEDERAL CONTROL ENTITLED TO DISMISSAL.

A passenger's suit against a carrier for wrongs committed after federal government had taken charge of the railroad, should be dismissed as to the carrier on motion of the Director General of Railroads, asking that he be substituted as party defendant pursuant to General Order No. 50.

On Motion for Rehearing.

2. CARRIERS ⬳277(6)—$500 FOR CAUSING PASSENGER TO VACATE BERTH EXCESSIVE BY $250.

For damages to passenger by reason of conductor waking him and ordering him to vacate berth unless he paid additional fare, conductor intimating that plaintiff had altered his tourist sleeper ticket to standard sleeping car ticket, held verdict for $500 was excessive, and would be reduced to $250.

Appeal from District Court, Bexar County; M. Kennon, Judge.

Action by H. M. Wurzbach against the Galveston, Harrisburg & San Antonio Railway Company and Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendants appeal. Judgment reversed as to the railroad company and affirmed as to the Director General, on condition that remittitur be filed; otherwise reversed as to him.

Baker, Botts, Parker & Garwood, of Houston, and Dibrell & Mosheim, of Seguin, for appellants.

Wurzbach & Wirtz, of Seguin, for appellee.

COBBS, J. This suit was brought by appellee against the Galveston, Harrisburg & San Antonio Railway Company to recover the sum of $5,000 actual damages and $5,000 exemplary damages. The suit was filed on the 4th day of September, 1918, for alleged injuries inflicted by appellant on appellee on the 12th of August, 1918. The suit was based upon the fact that appellee, residing in Seguin, Guadalupe county, Tex., purchased a railroad ticket entitling him to passage from Seguin to Houston, and boarded the train at Seguin and went into the sleeping car at-

tached to the train. Appellee was informed by the conductor in charge of the sleeping car that in order to ride in the sleeping car he would have to purchase another ticket, calling for passage on the sleeper. While the train was waiting at Seguin plaintiff went to the ticket agent, purchased a ticket calling for passage on the sleeping car, and paid therefor the sum of 93 cents, the usual and customary fare for passage on a standard sleeping car from Seguin to Houston.

He delivered to the conductor in charge of said sleeping car his ordinary railroad ticket, Pullman sleeping car ticket and the additional ticket calling for passage on the sleeping car, to be delivered to the conductor in charge of the train. At about 2:30 or 3 o'clock in the morning plaintiff was aroused from his sleep and informed he could not ride in the sleeping car for the reason he had no ticket authorizing him to ride in a standard sleeper, the ticket purchased by him being for passage in a tourist sleeper. Appellee informed the conductor he had paid the agent at Seguin the sum of 93 cents for such ticket, which amount the conductor admitted to be the correct charge, but insisted appellee did not have the proper ticket, charging that such ticket had been altered and the word, "standard" written thereon, and informed appellee he would be required to pay additional fare or vacate said sleeper, which plaintiff did do at about 3 o'clock, and rode into Houston in the ordinary day coach attached to defendant's train, arriving in Houston at about 7 o'clock.

It was alleged that the conductor, after arousing the appellee from sleep, making demands and accusations against appellee in an insolent, browbeating and bulldozing manner, spoke in a loud voice, to be easily heard by other passengers in the car, and acted maliciously and arbitrarily.

[1] Walker D. Hines, the Director General of railroads, made himself a party to said suit, and alleged that the plaintiff's petition was filed in said cause on the 4th day of September, 1918; that the cause of action declared upon occurred since December 31, 1917, and grew out of the operation of the defendant railroad company and pursuant to General Order No. 50, issued by the Director General of Railroads. On the 28th of October, 1918, the Director General moved that he be substituted as party defendant in said cause, and that the defendant railroad company be dismissed from the suit. The motion to dismiss was overruled, and the Director General was permitted to remain in the case, and the cause was prosecuted to judgment against both the railroad company and the Director General.

The action of the court in refusing to dismiss the railroad company from the suit, in accordance with said motion, is the subject of the first assignment.

The question here involved has been discussed by this court in the case of Baker, Receiver, et al. v. Bell, 219 S. W. 245, not yet officially published, and the reasons given therein are applicable here, except in the Bell Case the suit was not against the railway company, but against Jas. A. Baker, receiver, while the suit here was originally instituted against the railway company, but the cause of action accrued after the government had taken charge of the railroads, and it was not being operated by the servants and employés of the railroad, but was operated by the servants and employés of the Director General.

In support of the contention of appellee, as against the contention of appellant, he cites the case of El Paso & S. W. Ry. Co. v. Lovick, 210 S. W. 283. The difference in the two cases consists in the fact that the alleged accident or injury in the Lovick Case occurred on October 7, 1917, while the road was being operated by the carrier, and before it was taken charge of by the government. As the carrier was at the time of the alleged injury responsible for the same, and the Director General not being responsible in such case, it was proper to permit the suit to continue against the carrier subject to the provision, however, in respect to the effect of such judgment; but that is not the case here, and no reason is seen why the carrier should be kept in this case, as the wrong, if any, was committed at a time when the carrier had nothing to do with the operation of the road, and the motion should have been granted. Baker, Receiver, et al. v. Bell, supra.

It is complained in the second assignment that the judgment of the court is excessive because the jury in answering special issues 2 and 3, submitted to them by the court, that the only element of damages which entered into the cause to be considered by them was by reason of appellee's being awakened and requested to pay additional fare, having elected to stand upon his legal right to refuse to pay such additional fare, got up from his berth in the sleeping car, dressed and walked back to the day coach or chair car at about 3 or 4 o'clock in the morning and rode into the city of Houston, about 100 miles. No fact shows damages, except the fact of his being awakened and disturbed and the inconvenience. No evidence shows consequences resulting to plaintiff by reason of his having to make the change and the sum of $500 was excessive.

Five special issues were submitted to the jury and they answered, to the first, that the conductor ordered plaintiff to vacate his berth unless he paid the additional fare; to the second, that the conductor did not charge plaintiff with having altered the ticket; to the third, that the conductor did not act towards plaintiff in an overbearing and bull-

dozing manner in awakening him and demanding additional fare; to the fourth that plaintiff suffered damages by reason of the alleged act committed by the conductor in charge of the train; and to special issue No. 5 found damages in the sum of $500. The jury eliminated exemplary damages from the case by their answers to the special issues, and the only testimony bearing upon actual damages was that of appellee that—

"The conduct of the conductor, of course, was the greatest humiliation to me, and I never was more nervous in my life than I was after that, and I continued in that condition all that day."

He did not testify to any personal or physical discomfort, but merely that he was nervous from having the conductor awake him and ask him for the extra fare. It is true that he swore that the conductor addressed him in a "bulldozing style—dictatorial—dictatorial as a man could be"; but the conductor denied this, and he was supported by other testimony, which the jury believed to be true, for they found that the conductor did not charge appellee with altering his ticket, and that he did not act toward appellee "in an overbearing, bullying, or insulting manner in waking him up and demanding additional fare." From the findings of the jury, which are supported by facts, the conductor merely waked appellee, and requested that he pay additional fare, and that appellee refused to pay it and arose, dressed and went into the chair car where he remained for 3 or 3½ hours, while riding from Glidden to Houston. No evidence was produced of any kind of discomfort or any bad results to body or mind at any time after or during the journey, except nervousness, which was attributed to rough language and conduct on the part of the conductor, and which the jury found had no existence. The damages found by the jury are utterly disproportionate to the damages shown by the evidence. G., H. & S. A. Ry. Co. v. Short, 173 S. W. 615; G., H. & S. A. Ry. Co. v. Short, 163 S. W. 601; Cleburne Street Ry. Co. v. Barnes, 168 S. W. 991; Pennock v. Texas Builders' Supply Co., 193 S. W. 766; G., C. & S. F. Ry. Co. v. Shepard, 63 Tex. Civ. App. 102, 132 S. W. 91.

Aside from the error in refusing to dismiss the case as against the railroad, and the fact that the verdict is excessive, we find no error in the record. The judgment is reversed in so far as it awards a recovery against the railroad, and judgment rendered, dismissing the case as to it. The judgment will be reformed so as to award a recovery against the Director General of Railroads for the sum of $50, if a remittitur in the sum of $450 is filed within 15 days; otherwise the judgment will be reversed in so far as it relates to said Director General, and the cause remanded for a new trial as against him.

## On Motion for Rehearing.

[2] Upon further consideration of the testimony in this case and authorities cited and discussed, we are still of the opinion that the verdict is excessive, but conclude that in fixing the amount of the excess we failed to give certain facts tending to show mental anguish the consideration to which they were justly entitled, and that the remittitur should be changed to $250, instead of $450. While it is true that the conductor declined to charge plaintiff with changing the ticket, he made statements concerning what the ticket agent and the Pullman conductor had said, which are bound to have created in the mind of plaintiff the belief that the conductor thought he, plaintiff, had changed the ticket, although he was unwilling at that time to prefer a specific charge to that effect.

The order heretofore entered with respect to a remittitur is set aside, and it is ordered that a remittitur of $250 be filed, and if this is done the judgment will be affirmed for the remainder of $250. If such remittitur is not entered, the judgment will be reversed, and the cause remanded.