**VIRGINIAN RY. CO. v. STATON.**
**No. 4027.**

Circuit Court of Appeals, Fourth Circuit.
June 8, 1936.

John R. Pendleton, of Princeton, W. Va. (W. H. T. Loyall and W. C. Plunkett, both of Norfolk, Va., on the brief), for appellant.

Joseph M. Sanders, of Bluefield, W.Va. (Walter G. Burton, of Princeton, W. Va., Grover C. Worrell, of Charleston, W. Va., and Sanders & Day, of Bluefield, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

SOPER, Circuit Judge.

The plaintiff in the District Court, a brakeman on the Virginian Railway Company, accidentally lost his right leg during a switching operation when in the course of his duty he attempted to uncouple certain freight cars and cut them from a train. He recovered a judgment of $10,000 in the court below, from which the railway company appealed on the ground that the injury could not be attributed to the failure of the defendant to perform any duty which it owed to its employee, but was caused either by the negligence of the plaintiff himself in going between the cars while they were in motion, or of the engineer of the train, his fellow servant, in starting the train prematurely while the plaintiff was still between the cars. The trial court held that under the evidence the plaintiff was not entitled to the benefits of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., because he was engaged at the time as a brakeman upon an intrastate train running a distance of 18 miles between two railroad yards in the state of West Virginia. The question is not without interest, since by far the greater number of the cars in the train were intended for the shipment of coal destined from the mines of West Virginia to points outside the state; but we need not decide this question, because in our opinion there

was sufficient evidence to support the judgment, even if the harsher rules of the common law of negligence are applied.

In order to separate the cars, the brakeman had to turn an angle-cock in the air line, disconnect the air line, and pull the lift lever between two of the cars. He was on the engineer's side of the train, and although it was in the nighttime, his lighted lantern could be seen from the engine. He testified that immediately before the accident, the train was backing but stopped upon his signal. Thereupon, in order to reach the coupling device, he placed his right foot inside the rail between the cars and instantly the train moved backward again without any signal from him. He tried to step back from between the cars, but the right leg of his breeches caught upon a spike or sliver on the rail and the next instant the wheel of the forward car caught his leg above the ankle. He was knocked down and pushed along, his leg under the wheel and his body outside the track, partly supported as he clung to the stirrup of the car. When he had been dragged 5 to 8 feet, his foot was caught by a projecting spike on the rail and was pulled off. In all, he was dragged 21 feet before the train stopped. It was necessary to amputate his leg 5 inches above the knee.

In addition to this testimony, another brakeman testified on plaintiff's behalf that he examined the track at the place of the accident on the night that it had happened. He noticed the bottom part of the overalls and blood at the point of injury, and saw two spikes sticking up approximately 2½ inches inside the rail. There was no blood or anything else on the first one, but there was blood on the second, 8 or 10 feet distant from the first, and there were marks inside the track as if something had been dragged along, which went as far as the second projecting spike but not beyond. Another witness for plaintiff testified that a spike was sticking up 3 to 4 inches at or near the point of the accident. The District Court held that there was sufficient evidence to submit to the jury the inquiry whether the railway company had used due care to furnish a safe place for the plaintiff to work.

The defendant concedes that there were two protruding spikes of the sort commonly used to affix the rail to the ties, but contends that the evidence shows that at the point where the plaintiff's leg was caught by the wheel, there was no protruding spike or sliver; that the nearer spike was 9 feet and the farther spike 12 feet away; that the damage was done before the first spike was reached and that contact therewith served only to cut off a foot already crushed and mangled. Hence the argument is made that the cause of the accident was not the failure of the railway company to use due care to provide a safe place to work, but the negligence of the plaintiff in going between two cars in motion, or of the engineer in starting the cars prematurely. We think that this contention cannot be sustained, for the conflicting evidence raised a jury question and furnished a sufficient basis for the conclusion that the escape of the plaintiff from his position of danger was prevented when his clothing was caught by a protruding spike. Granting that the presence of the spike between the railroad tracks was due to negligence on the part of the railway company, it is clear that the injury was due to the concurrent negligence of the railway in failing to furnish a safe place to work and of the engineer in prematurely starting the train, for in considering the contention that there was no case to submit to the jury, we must also assume, as the plaintiff testified, that the engineer carelessly started the train before the signal was given. It is settled law that if the negligence of a master concurs with the negligence of a fellow servant to produce an injury, the master is not free from liability through the fellow servant rule, but is liable to respond in damages for the resulting injury. Pennsylvania R. Co. v. Garcia (C.C.A.) 152 F. 104; The Hamilton (C.C.A.) 146 F. 724, affirmed 207 U.S. 398, 28 S.Ct. 133, 52 L. Ed. 264; Gila Valley, G. & N. R. Co. v. Lyon, 203 U.S. 465, 473, 27 S.Ct. 145, 51 L.Ed. 276; Kocsis v. American Car & Foundry Co. (C.C.A.) 201 F. 913; Grand Trunk Railway Co. v. Cummings, 106 U. S. 700, 1 S.Ct. 493, 27 L.Ed. 266. As the Supreme Court said in Miller v. Union Pacific R. Co., 290 U.S. 227, 236, 54 S.Ct. 172, 174, 78 L.Ed. 285: "The rule is settled by innumerable authorities that if injury be caused by the concurring negligence of the defendant and a third person, the defendant is liable to the same extent as though it had been caused by his negligence alone. 'It is no defense for a wrongdoer that a third party shared the guilt of the same wrongful act, nor can he escape liability for the damages he has caused

on the ground that the wrongful act of a third party contributed to the injury.' "

██ The railway company, however, contends that the presence of the protruding spikes did not indicate a lack of due care on its part. We are told that there are from 4 to 8 spikes in each tie, and it is not unusual for them to work their way up from the ties as the result of the ordinary operation of the trains, and that it would be beyond the requirement of reasonable care to keep them all in place at all times. Moreover, it is said that injury from protruding spikes to an employee using the track in the course of his duties is an event not reasonably to be anticipated, and that to impose liability upon the railway company in this case would be to expand its obligation to exercise due care to provide its employees with a safe place to work into the obligation of an insurer of their safety. This contention is worthy of careful consideration, for we are not justified in exacting from the carrier a degree of care and diligence beyond that which it is reasonable to employ having regard to the nature of the business of railroad transportation and the obligation of the carrier to keep the traffic moving. Thus the Supreme Court of the United States in Nelson v. Southern Ry. Co., 246 U.S. 253, 38 S.Ct. 233, 62 L.Ed. 699, affirmed the judgment of the Supreme Court of North Carolina, 170 N.C. 170, 86 S.E. 1036, in holding that the railroad company did not fail in any duty owed to a civil engineer employed by it who was injured while surveying within one of its yards by a tie containing a defect which was not of a character to impair safety in the operation of the road; and in Atchison, etc., Railway Co. v. Calhoun, 213 U.S. 1, 9, 29 S. Ct. 321, 323, 53 L.Ed. 671, it was said: "But, even where the highest degree of care is demanded, still the one from whom it is due is bound to guard only against those occurrences which can reasonably be anticipated by the utmost foresight. It has been well said that, 'if men went about to guard themselves against every risk to themselves or others which might, by ingenious conjecture, be conceived as possible, human affairs could not be carried on at all. The reasonable man, then, to whose ideal behavior we are to look as the standard of duty, will neither neglect what he can forecast as probable, nor waste his anxiety on events that are barely possible. He will order his precaution by the measure of what appears likely in the known course of things.' Pollock, Torts (8th Ed.) 41."

██ On the other hand, the evidence in the pending case shows that the railway company was well aware that constant supervision was required in order to keep its roadbed in good condition, for it caused its tracks in the railroad yard, where the accident occurred, to be inspected by a track-walker once or twice a week and by a foreman once a week, so that protruding spikes might be hammered back into place. It is admitted that ordinarily spikes work up gradually and the plaintiff testified that it would take a spike three months to work up to a height of 4 inches above the tie. We think, therefore, that the jury might reasonably have inferred that the duty of inspection had been carelessly performed, for otherwise spikes protruding according to various estimates from 2½ to 4 inches would have been discovered and put back in place.

██ Nor can we agree with the appellant that injury from protruding spikes to a brakeman engaged in switching operations was so improbable that it was not reasonable to anticipate it. The work must be done with promptness and efficiency in all conditions of weather by men who must go between the cars to uncouple them and frequently the operation must be performed at night when the view by the brakeman of the state of the tracks is obscured. The particular accident which happened in this case was doubtless unusual; but liability is not dependent upon a prevision of the precise event. It is sufficient if some injury may be reasonably expected, unless precaution is taken. Texas & P. Ry. Co. v. Carlin (C.C.A.) 111 F. 777, 60 L.R.A. 462, affirmed 189 U.S. 354, 23 S.Ct. 585, 47 L.Ed. 849; Johnson v. Kosmos Portland Cement Co. (C.C.A.) 64 F.(2d) 193; Memphis Consol. Gas & Electric Co. v. Creighton (C.C.A.) 183 F. 552; Restatement of the Law of Torts, § 435. It was therefore proper in the pending case for the District Judge to submit to the jury the question whether the defendant railway company had performed the duty of exercising reasonable care to furnish to the plaintiff a reasonably safe place to work, and the motion of the defendant for a directed verdict in its favor was rightly refused.

For a case somewhat similar in its material facts, see Lancaster v. Fitch (Tex.

Civ.App.) 239 S.W. 265, affirmed 112 Tex. 293, 246 S.W. 1015; see, also, Doyle v. St. Louis Merchants' Bridge Terminal Railroad Co., 326 Mo. 425, 31 S.W.(2d) 1010; Baltimore & O. R. Co. v. Flechtner (C.C.A.) 300 F. 318; Chicago, etc., R. Co. v. Kelley (C.C.A.) 74 F.(2d) 80.

The judgment of the District Court is affirmed.