**GULF STATES UTILITIES CO. v. DILLON et al.**

No. 1970.

Court of Civil Appeals of Texas. Waco.

Dec. 23, 1937.

Rehearing Denied Jan. 20, 1938.

———◦———

Orgain, Carroll & Bell, of Beaumont, for appellant.

T. P. Buffington, of Navasota, and Brownlee & Brownlee, of Madisonville, for appellees.

ALEXANDER, Justice.

This action was brought against Gulf States Utilities Company by the surviving widow and children of Hugh Dillon, deceased, to recover the damages alleged to have been suffered by them on account of the death of the said Hugh Dillon, an employee of the defendant, who was electrocuted while making a connection on one of the defendant's light poles. The jury, in answer to special issues, returned a verdict for plaintiffs in the sum of $20,000. The defendant appealed.

Appellant complains of the failure of the court to properly instruct the jury on the measure of damages. The court submitted to the jury special issue No. 6a, as follows: "What sum, if any, if paid now in cash do you find as damages to Mrs. Blanche Dillon, Hugh Dillon, Jr., and Patricia Dillon sustained by the death of Hugh Dillon?" As we understand the record, the charge, as originally prepared and presented to counsel, did not contain any instruction as to the measure of damages to be applied in answering the issue above set out. Appellant objected to the charge as follows: "This defendant objects to special issue No. 6a of the court's charge in that: (a) the court does not properly instruct what the jury can consider as damages and without such an instruction the jury is likely to speculate and conjecture as to what they can consider and return an erroneous

verdict, the same being a legal term; (b) because the court does not affirmatively instruct the jury that they cannot consider such items as (1) sorrow, (2) grief, (3) loss of companionship, (4) affection, (5) mental pain, if any, suffered by Mrs. Blanche Dillon as physical pain, all of which will, in reasonable probability, be considered by the jury unless excluded from their consideration." Thereafter, the court added paragraph 8 to the introductory part of the main charge, which was as follows: "You are further instructed gentlemen, that in the event you should find damages for the plaintiffs, you will not consider such items as (1) sorrow, (2) grief, (3) loss of companionship, (4) affection, (5) mental pain, if any, suffered by Mrs. Blanche Dillon." It will be noted that by paragraph 8 of the charge above quoted the court met appellant's objection "(b)" by instructing the jury as to what should not be considered in fixing the amount of the damages suffered by Mrs. Dillon, but the court did not instruct the jury as to what they should not consider in arriving at the damages suffered by the children, and, in addition, the court did not meet appellant's objection as set out in paragraph (a) above quoted by instructing the jury as to what should be considered in fixing the amount of damages to be awarded. Damages recoverable for injuries resulting in death are limited to the pecuniary loss sustained by those authorized to maintain the action. 31 Tex. Jur. 133. It is a well-settled rule that the trial judge must give the jury proper instructions as to the measure of damages to be applied in each case, and a failure to do so, when the matter is properly called to the attention of the court, is reversible error.. International-Great Northern Ry. Co. v. Casey, Tex.Com.App., 46 S.W.2d 669, syl. 13; International-Great Northern Ry. Co. v. King, Tex.Com. App., 41 S.W.2d 234, syl. 3; St. Louis Southwestern Ry. Co. v. Hill Bros., Tex. Civ.App., 58 S.W.2d 861; Stewart v. Baker, Tex.Civ.App., 108 S.W.2d 946. This rule has been applied in actions to recover damages for injuries resulting in death. Galveston, H. & S. A. Ry. Co. v. Worthy, 87 Tex. 459, 29 S.W. 376; Houston & T. C. Ry. Co. v. Gant, Tex.Civ. App., 175 S.W. 745; Hines, Director General v. Kelley, Tex.Com.App., 252 S. W. 1033; Gulf C. & S. F. Ry. Co. v. Conley, 113 Tex. 472, 260 S.W. 561, 32 A. L.R. 1183.

Special issues Nos. 1 and 2, as submitted to the jury, were as follows:

"Special Issue No. 1: Do you find from a preponderance of the evidence that the defendant failed to provide Hugh Dillon, at the time of the alleged injury, a reasonably safe place to work?

"Special issue No. 2: If you have answered Special Issue No. 1 'No', then you need not answer this Special Issue. If you have answered Special Issue No. 1 'Yes', then you will answer this Special Issue: Was such failure the proximate cause of Hugh Dillon's death? Answer 'Yes' or 'No'."

By the foregoing issues the court was undertaking to determine whether or not the defendant was liable for failure to furnish a safe place to work. It will be noted, however, that the court inquired only as to whether or not the defendant failed to furnish a safe place to work and whether such failure was the proximate cause of the employee's death. No issue was submitted to determine whether or not the employer was negligent in failing to furnish a safe place in which to work. An employer is not bound unconditionally to furnish a safe place for employees to work, but is required only to exercise ordinary care to furnish a reasonably safe place to work and is liable only for a negligent failure to do so. 29 Tex.Jur. 179; Texas & N. O. Ry. Co. v. Black, Tex. Civ.App., 44 S.W. 673; Vilter Mfg. Co. v. Kent, 47 Tex.Civ.App. 462, 105 S.W. 525. The above group of issues therefore were insufficient to determine liability on the ground stated.

In this connection, we call attention to the fact that, while plaintiffs alleged generally that the defendant was negligent in failing to furnish a safe place to work, they also alleged specifically the defects relied on to show that the place of work was unsafe. Therefore, upon another trial, the court should not submit in a single issue the defendant's negligence generally in failing to furnish a safe place to work but should submit separately the issue as to the existence or nonexistence of each of the various defects in the premises which it is claimed made the premises unsafe. 30 Tex.Jur. 841; 41 Tex.Jur. 1100; Fox v. Dallas Hotel Co., 111 Tex. 461, 240 S. W. 517.

Special issue No. 1, as above quoted, was so framed as to properly place burden of proof on plaintiff. It will be

noted, however, that special issue No. 2 does not, by the wording thereof, place the burden of proof on either party, and the charge does not elsewhere place the burden of proof on plaintiff. This defect was timely called to the attention of the trial court, but the court failed to make the correction. This was error. Texas Employers' Ins. Ass'n v. Lemons, 125 Tex. 373, 83 S.W.2d 658. What has been said with reference to the failure to properly place the burden of proof in the submission of special issue No. 2 has a like application to special issues Nos. 4 and 6.

■ Special issue No. 5 was as follows: "Special Issue No. 5: Do you find from a preponderance of the evidence that the defendant was guilty of negligence in maintaining its service wires and guy wires so that they were in contact with each other at the time of the alleged injury?" No other issue was submitted to the jury to determine whether or not the defendant maintained its service wires and guy wires so that they were in contact with each other at the time of the alleged injury. The above issue assumes the existence of these facts, and therefore was on the weight of the evidence. Speer on Special Issues, p. 254; 41 Tex.Jur. 1133; San Antonio Public Service Co. v. Smith, Tex. Civ.App., 57 S.W.2d 179, syl. 5.

■ Appellant contends that the evidence is insufficient to show any liability on its part. The record, however, is not in condition to enable us to properly pass on this assignment. It appears that in the trial below the parties used a model to represent the relative position of the poles and various wires as they were at the time and place of the accident. The witnesses, in describing the accident and the scene thereof, failed to give sufficient data to enable us to understand the testimony. A sample of the evidence will illustrate the point. The local superintendent, in describing the scene, testified, in part, as follows:

"A. They (the wires) were right here (indicating).

"Q. Even with the top arm on the pole? A. Yes, sir. This line comes right along here (indicating).

"Q. Where was this wire connected (indicating) at the time you went up there that morning? A. Right here (indicating).

"Q. Where was this wire here (indicating) connected? A. Right here (indicating).

"Q. Was it attached to the wire? A. Yes, sir.

"Q. Now, was there anything across and near this guy wire here (indicating) on this crossarm, that morning when you went up there? A. They were both there (indicating).

"Q. Was there any jumper there? A. There was a jumper in there (indicating).

"Q. Where was this guy wire (indicating) then? A. Right here (indicating).

"Q. About how far is it from this jumper (indicating) across to this place (indicating)? A. A foot, maybe. * * *

"Q. You stated that the contact was made from here (indicating) over to that point here (indicating), that this was the change to be made (indicating)? A. This wire here (indicating) connected here (indicating) and went through here (indicating).

"Q. The current would go through there (indicating) and come out here (indicating)? A. Yes, sir.

"Q. And then run across here (indicating) and down the distribution wire here (indicating)? A. Yes, sir."

The only eyewitness to the accident described it as follows:

"Q. When you heard him holler, did you look up? A. Yes, sir, I looked up.

"Q. What was his position? A. He was on this side of the pole, upon the crossarm of the pole.

"Q. Did he have his safety belt on? A. He had his safety belt around the pole, above there.

"Q. The safety belt was around the pole below the second wire? A. Yes, sir.

"Q. Where was his feet? A. His feet, —one on this side there (indicating) and the other across there (indicating).

"Q. One foot was right along there (indicating)? A. On this side (indicating), somewhere along in there (indicating).

"Q. His foot was right along there (indicating), that was his left foot? A. Yes, sir, his left foot was right along here (indicating.)"

This same method of examination was pursued throughout the trial, and, as a result, we are unable to understand what

the witnesses meant. The case must be reversed for the errors above pointed out, and, for these reasons, we will defer consideration of the assignment of the insufficiency of the evidence.

The judgment of the trial court is reversed and the cause is remanded for another trial.