**TEXAS & N. O. R. CO.   v.   POOL.**

No. 3107.

Court of Civil Appeals of Texas.
Waco.

Nov. 19, 1953.

Rehearing Denied Jan. 7, 1954.

Baker, Botts, Andrews & Parish, Houston, Hancock & Hancock, Waxahachie, Taylor & Dickens, Marlin, Abner V. McCall, Waco, for appellant.

Jacobs & Schmidt, Houston, for appellee.

TIREY, Justice.

This is a negligence case brought under Federal Employers' Liability Act, § 1, as amended, 45 U.S.C.A. § 51.

Appellee, an employee of appellant for more than 31 years, recovered a jury verdict in the court below for the sum of $57,971. He was a railroad engineer at the time he received his injuries and was engaged in his regular line of duty of readying his engine for a trip to Fort Worth, and while so doing he crossed the track in the rear of his engine and slipped on a piece of grease on a railroad tie and fell and sustained injuries. For specific acts of negligence he alleged substantially that defendant (a) failed to provide a safe place for him to work at the time in question in that it failed to fill up with gravel or shell the area around the tracks in question to a safe depth at least covering the ties and the area between the walkway and the tracks in question; (b) in failing to warn him of the existence of oil and grease upon the tracks, rails and ties in and surrounding the outbound engine house tracks at the Ennis yards where he was required to work; (c) in failing to keep the ties, rails and tracks at the place in question free and clear of oil and grease and other foreign substances; (d) in permitting oil and grease to drop upon the ends of the ties at the place in question when same would become hidden by dust and sand and not discernible to the eye of a person of ordinary prudence, acting in the course of ordinary care. In connection with the foregoing specific allegations appellee alleged that appellant had knowledge of the dangerous condition and the existence of the oil and grease upon the tracks for a sufficient length of time in which in the exercise of ordinary care it should have removed and cleaned up the same to the extent that it would be a safe place for appellee to work, and that appellant was guilty of negligence in each of said

particulars alleged above, and that such negligence directly and proximately caused and resulted in the injuries of appellee. Pertinent to this discussion appellant filed general denial and specially pleaded that defendant was negligent in many respects and specially pleaded that defendant's negligence was the sole proximate cause of his fall. The jury in its verdict, pertinent to this discussion, convicted the appellant of negligence in each of the respects charged against it and found that each was a proximate cause of appellee's injuries and acquitted appellee of all acts of negligence charged against him.

Appellant's Point 1 is to the effect that the judgement should be reversed and rendered because there is no evidence of any act or omission of the defendant that proximately caused appellee's injuries. Points 2 to 25, inclusive, are substantially to the same effect, except Points 4, 7, 10, 13, 16, 19 and 22 assert that the findings of the jury are not supported by sufficient evidence.

In appellee's brief we find substantially the following summary: On August 3, 1951, at about 2:30 P.M., appellee was readying defendant's engine for a run to Fort Worth; that he was inspecting and oiling his engine and in order to complete it he was forced to cross the tracks to the rear of the engine; that he picked his way across a tie, stepping on the dry places that were free of oil and grease; that when he stepped on the end of a tie his feet went out from under him and he fell striking his back on the steel rail; that the tracks were covered with oil, water, grease, mud and slush between the ties as well as on the ties; that the employees had to pick their way across the track by walking on what appeared to be dry spots; that defendant, through its Superintendent and its Master Mechanic, had known of the condition of these tracks for many years prior to plaintiff's injury; that letters were written to both the defendant's Superintendent and Master Mechanic before the accident, placing them on notice of the conditions of these outbound engine house tracks which created a safety hazard; that the oil and water soaked the sand and gravel between the ties and made a slush; that if one would step on the sand and gravel between the ties he would bog down over his shoe tops; that oil was placed on the tracks by the discharge of the accumulated steam and oil in the oil heaters of the engines that were readied at this place; that oil also got onto the tracks by reason of employees letting the fuel oil tanks overflow when they were being filled; that oil also was dropped by engineers in oiling the engines; that grease was put on the tracks and ties by reason of its dropping off of the engines that had been greased with pressure guns at the roundhouse; that defendant's employees would put too much grease in the fittings causing grease to squirt out of the joints which later dropped off; that water got on the tracks when employees would run the water tanks over; that the excess grease on the engines could have been wiped off before the engines left the roundhouse, which was not done; that the sand and gravel between the ties of the outbound engine house tracks were seldom cleaned up; that only one man did any work on this track and he only filled holes along with doing his other work of walking 20 to 30 miles of track daily; that the area between the walkway and between the ties could have been concreted to give better footing; that this was not done until after plaintiff was injured; that the area could have been improved by placing fresh sand and gravel on the tracks; that this was done infrequently; that the oil from the oil heaters could have been prevented from being discharged on the tracks by having the heaters blown out at the roundhouse over a sump; that grease that fell from the engines could have been removed after each engine departed; that several years previously a man had been assigned to constantly clean up the area; that it was much better then.

Appellee was familiar with the condition of the tracks and place where he sustained the injury, and since no one saw him fall his testimony is pertinent and controlling in this behalf. On direct examination he testified in part as follows:

"Q. Now, when you crossed this track, where did you cross? A. The only place was on the ties.

"Q. Did you look at the ties? A. Yes, I did.

"Q. What did it look like? A. Well, in places it was greasy, but I picked the best places.

"Q. What did the places you stepped on look like? A. It looked like it was safe to step on all right.

"Q. Now as you stepped across the track did anything happen? A. Yes; I fell.

"Q. What caused you to fall, do you know? A. Yes; I stepped across the rail and hit a piece of grease lying on the tie.

"Q. How do you know there was a piece of grease? A. I found it after I fell.

"Q. What did it look like? A. Just a shiny piece of grease where I stepped.

"Q. Before you stepped there what did it look like? A. I couldn't see anything before I stepped; it looked clear before I stepped.

"Q. Looked like it was safe? A. Yes, sir.

"Q. Is that what you did? A. Yes, sir.

"Q. What happened? A. I fell.

"Q. What happened to your feet? A. Both feet was over the rail and the other part of my body was beside the rail.

"Q. Was anyone there? A. I don't know; I didn't notice anybody.

"Q. Did you get up then? A. Yes, sir. I got up and stretched my legs; was hurt pretty bad but I walked to the cab."

On cross-examination appellee testified in part as follows:

"Q. Did you cross the first rail—the west rail? A. Yes, sir.

"Q. Did you cross the second rail—the east rail? A. Yes, sir.

"Q. Did you get both feet across? A. Yes, sir; both were across when I fell. Both feet was across and my body was—

"Q. Were your feet on the end of the ties? A. Yes, sir.

"Q. Both of them? A. I couldn't say; it was done so quickly I just know I fell.

"Q. You don't know quite how it was? A. That's right.

"Q. Didn't you testify that you got both feet over the far rail and that both of them slipped out from under you and that you fell backward? A. That's right.

"Q. And that you struck your back on the rail. Is that the way it happened? A. That's right.

"Q. Was that day or night time? A. It was day time.

"Q. Were you working slow or fast? A. Had to work slow.

"Q. Were you looking carefully where you put your feet? A. Yes, sir.

"Q. You looked before you stepped? A. Yes, sir.

"Q. You didn't see anything on it? A. No, sir.

"Q. When your deposition was taken in Houston, did you testify that there was a piece of grease on the tie upon which you stepped with both feet, about 3½ inches long, 3 inches wide, and about ⅛ inch thick? A. I testified that I saw that grease after I had fallen.

"Q. You did testify that? A. Yes, sir.

"Q. You say you looked, and that thing lying right in front of you, and

you didn't see it until after you had fallen? A. That's right; yes, sir.

"Q. That is the way you now testify that the accident happened? A. That's right; yes, sir.

"Q. What kept you from seeing it? A. After I had fallen I noticed that there was a kind of dust over it that kept me from seeing it.

"Q. A film of dust over it? A. Yes, sir.

"Q. So when you didn't see it, it was because it was covered by that film of dust? A. That is what I believe."

The outbound engine house tracks were about 350 feet long, with a concrete sidewalk about 2½ feet wide. These sidewalks are from 4 to 8 inches from the end of the tie; the rails of the track rest on the ties and the ties are from 4 to 8 inches apart. Sand and gravel fill the space between the ties in part. Such sand and gravel fill was flush with the top of the ties in the center of the track and sloped toward the rail on each side so that the water would drain off. Water drained from the tracks toward the concrete sidewalk and ran off down the space between the ends of the ties and the concrete sidewalk. These outbound tracks were in use 24 hours of the day. On such tracks the locomotives were oiled, checked, watered and otherwise prepared for trips. From 10 to 15 locomotives were prepared for trips on these tracks each day. There was a water spout, an oil house, and a sand house by the tracks for the preparation of the locomotives for trips. The tracks had been used as outbound tracks for over 30 years preceding August 3, 1951, the date of plaintiff's accident. Plaintiff's witnesses testified that the oil and water and grease soaked into the sand and gravel fill between the ties and made it slushy and mucky; that employees in working around the locomotives walked on the ties rather than step in this muddy or slushy fill between the ties; that defendant's clean-up men put sand on the oil and grease to soak it up and prevent slipping but that the tracks were still oily, greasy, wet and slushy. One of plaintiff's witnesses testified that he was a locomotive engineer; that he had been using these outbound tracks for 33 years; that the tracks were always covered with oil and grease; that the space between the rails was slushy with oil and water soaked into the gravel; that if you stepped in the gravel you would bog down to your ankles.

■ This court in J. R. Watkins Co. v. King, 83 S.W.2d 405, 407, no writ history, made this statement of the rule, which we think is pertinent here:

"When a party testifies to positive and definite facts which, if true, would defeat his right to recover or conclusively show his liability, and such statements are not subsequently modified or explained by him so as to show that he was mistaken, although testifying in good faith, it has generally been held that he is conclusively bound by his own testimony and cannot successfully complain if he is non-suited or the court directs a verdict against him." (See Points 2 and 3 and authorities there collated.)

See also Stanolind Oil & Gas Co. v. State, 136 Tex. 5, 133 S.W.2d 767, 145 S.W.2d 569; LaFleaur v. Kinard, Tex.Civ.App., 161 S.W.2d 144, er. ref. wom; Leonard v. Smith, Tex.Civ.App., 186 S.W.2d 284, no writ history; Garza v. Garza, Tex.Civ. App., 191 S.W.2d 767, no writ history; City of Waco v. Thralls, Tex.Civ.App., 172 S.W.2d 142, er. ref. wom. See authorities collated in Point 8.

■ Our view is that under the record here made that appellee's case must be determined on the basis as to whether appellant was negligent in permitting the piece of grease (where he slipped) to drop on the end of the tie, and further whether defendant was negligent in failing to discover such grease and remove it from the end of the tie before plaintiff stepped on it.

In Carey v. Pure Distributing Corp., 133 Tex. 31, 124 S.W.2d 847, points 1-4,

page 849, we find this statement of the rule by our Supreme Court:

"* * * a mere showing of negligence will not justify holding the one guilty thereof liable for damages. The evidence must go further, and show that such negligence was the proximate, and not the remote, cause of the resulting injuries. In order for it to be said that an injury proximately resulted from an act of negligence, the evidence must justify the conclusion that such injury was the natural and probable result thereof. In order to justify such a conclusion, the evidence must justify a finding that the party committing the negligent act ought to have foreseen the consequences thereof in the light of the attendant circumstances."

See also Hopson v. Gulf Oil Corp., 150 Tex. 1, 237 S.W.2d 352, 353, and authorities there cited.

That leads us to say that the finding of the jury to Special Issues Nos. 2, 3 and 4 to the effect that defendant failed to provide a reasonably safe place for plaintiff to work, and that such was negligence and the proximate cause of plaintiff's fall and injuries, must be reduced to a finding that defendant was negligent in failing to discover and remove the grease which caused the plaintiff to fall, otherwise such findings would not support the judgment of the trial court in plaintiff's behalf.

■ Likewise, the finding of the jury to Special Issues Nos. 5, 6, and 7 to the effect that defendant permitted oil and grease to drop on the ends of the ties on the outbound engine house tracks prior to August 3, 1951, and that such was negligence and the proximate cause of plaintiff's fall and injuries, must be reduced to a finding that defendant was negligent in failing to find and remove the grease which caused plaintiff to fall, otherwise they would not support the judgment entered by the trial court. We are of the further view that the finding of the jury to Special Issues Nos. 8, 9 and 10 to the effect that defendant failed to keep the ties and tracks of the outbound engine house free and clear of oil, grease and water, and that such failure was negligence and the proximate cause of plaintiff's fall and injuries, must also be reduced to a finding that defendant was negligent in failing to find and remove the grease which caused the plaintiff to fall, otherwise this group of findings would not support the judgment of the trial court. In connection with the above findings, since evidence was tendered to the effect that some oil and grease was dropped on the ties and tracks by the engineers oiling their engines before departing on their trips, and that some oil got on the tracks by reason of letting the fuel oil tanks overflow when they were being filled by the employees, and that some oil was placed on the tracks by the discharge of accumulated steam and oil in the oil heaters of the engines that were readied at this particular place, and further that when too much grease was placed in the fittings it would be discharged on the tracks while the engine was being operated, absent evidence as to the length of time that the grease that caused him to fall had been deposited on the tie, would under each of the foregoing findings make of the defendant an insurer, when it is required only to use ordinary care to keep its tracks reasonably safe for its workmen. See Missouri, K. & T. Ry. Co. v. Jones, 103 Tex. 187, 125 S.W. 309; Hopson v. Gulf Oil Corp., supra.

The finding of the jury to Special Issues Nos. 11, 12 and 13 to the effect that defendant failed to fill up the space between the ties and the area between the walkway and the tracks in question, so as to make the same reasonably safe to walk on, and that such failure was negligence and the proximate cause of appellee's fall and injuries, is subject to the same criticism because the evidence is without dispute that he did not fall as a result of stepping between the ties, and the condition between the ties did not contribute to his fall, and the jury is not authorized to infer and find that if the space had been filled between the ties that plaintiff would not have stepped on the tie and would not have fallen, because that is

building one presumption upon another and would in effect make of the appellant an insurer of appellee's safety.

■■■ The burden was on the appellee to allege and prove that the negligence complained of against appellant was a proximate, and not a remote, cause of the accident and resulting injuries to him. "The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred." Texas & Pac. Ry. Co. v. Guidry, Tex.Civ.App., 9 S.W.2d 284, 285 (written July 12, 1928), point page 285, affirmed 280 U.S. 531, 50 S.Ct. 159, 74 L. Ed. 596.

■■■ No rule is better settled than the one to the effect that you cannot build one presumption upon another presumption. It is true that the testimony shows that there was slush between the ties at the time that the accident happened and appellee said that this condition between the ties caused him to walk on the ties instead of stepping between the ties, and that he could not step between the ties without getting in slush, where there was water and oil up to about the tops of his shoes; this he did not want to do and did not do, so since he did not step in the slush between the ties, such condition of the tracks in this respect did not cause him to fall—that is to say, there is no causal connection there. It is true that the slush between the ties caused him to pick his path in crossing the tracks and in so doing he says that the only place to walk was on the ties, and that the one that he selected to walk on was greasy in places but he picked the best places, and that he walked slowly and carefully, and that the place where he stepped looked like it was safe, and that he did not see the grease on the tie that caused him to fall until after he fell, and that the reason for not seeing it was because it was covered with a film of dust. There is no evidence as to the length of time that this particular grease had been on this tie. Since appellee was familiar with the condition of the tracks

and because of the condition of the tracks selected his pathway and walked slowly and carefully and did not see the grease until after he fell, and since appellant was bound only to use reasonable care to provide a safe place in which to work, did the jury have the right to infer and find (absent knowledge and time) that if the appellant had exercised reasonable care it would have discovered this grease that caused appellee to fall, although appellee did not discover it while exercising a very high degree of care for his safety? We think not.

In Hopson v. Gulf Oil Corp., supra [150 Tex. 1, 237 S.W.2d 356], we find this statement: "Prosser says that if liability is limited to foreseeable consequences, 'the consequences must be a normal, substantial part of the risk, which a reasonable man would recognize as fairly to be taken into account by the defendant at the time of his act.'" In applying this principle to the Hopson case the Supreme Court said: "The presence of grease or oil on the deck was not improbable. A reasonable mind might fairly conclude that injury to petitioner, under these circumstances, from slipping while lifting the end of the drum, was an injury of the general class or character of injuries that might reasonably have been anticipated as a result of failure to furnish sufficient help."

In the case at bar, the presence of grease and oil on the tracks where appellee was working was not improbable but was well known to him. It is true that he had no knowledge of the particular grease that caused him to fall until after he fell, but the condition of the tracks was so well known to him that he selected his path, he walked slowly and he walked carefully, and in the exercise of this high degree of care for his safety he stepped on a piece of grease covered with a film of dust.

In the Hopson case we find: "There is no evidence tending to prove that any employee of respondent, acting within the scope of his employment, either deliberately or negligently placed or dropped the grease on the deck, and there is no evidence that

respondent knew that the grease was on the deck, and there is little, if any, evidence tending to prove that the grease remained on the deck for such a period of time that in the exercise of ordinary care respondent should have discovered it."

■ In the case at bar there is no evidence that the grease that caused appellee to fall was deliberately placed or dropped on the tie. There is no direct evidence that such grease on the tie was deposited there by an engine, where too much grease had been placed in the fittings. There is direct evidence that grease was dropped on the tracks in some instances by engineers in oiling their engines while readying them for trips, and by employees letting the fuel oil tanks overflow while they were being filled, and that some oil was placed on the tracks by the discharge of accumulated steam and oil in the oil heaters of the engines that were readied at this particular place. There is no evidence that appellant knew that the grease that caused appellee to fall was on the tie, nor that this particular grease remained on the tie for such a period of time that appellant, in the exercise of ordinary care, should have discovered it and removed it. Our view is that the foregoing brings this cause within the rule in Hopson v. Gulf Oil Corp., supra, and the authorities there cited. But appellee says: "Even the Hopson case * * * is not in point since there was no evidence there that the grease was negligently placed or dropped on the ship's deck by employees of the defendent. We certainly have a different situation here where the grease was negligently dropped by defendant's employees by filling grease fittings with excessive amounts of grease which would fall on the ends of ties unless wiped off—and no wiping was done. The Hopson case * * * even goes further and shows that appellant's theory is untenable. There the plaintiff based his cause of action on two elements of negligence, one on permitting the grease to accumulate on the deck and the other on the failure to provide sufficient help. * * * Plaintiff here has not limited himself to the negligence of the dropping of the one piece of grease, on which he slipped, as a basis of recovery in this case, but has alleged and proved that the general condition surrounding every part of the work was conducted negligently, including the dropping of the grease and the failure to attend its removal, cooperated together with other negligent conduct to form other proximate causes of his fall and resultant injury." We are not in accord with these views for the reasons above stated. Appellee, by the institution of his suit, invoked the jurisdiction of the State Courts and the suit must be tried as any other suit for damages for negligence is tried in the State Courts, provided there is a specific compliance with the Federal Statutes. This is substantially the language used by the Supreme Court in Hopson v. Gulf Oil Corp., supra, points 10, 11, 237 S.W.2d at page 358.

■ Appellee further contends in effect that since the condition between the ties caused the appellee to choose the tie in question as his pathway, that the negligence of the defendant in permitting such condition to exist cooperated with the negligence of the defendant in permitting the grease and oil to remain on the ties, and was therefore a proximate cause of appellee's fall and resulting injuries. Such view is in conflict with the views expressed in the Hopson case and the cases there cited. It follows from what we have said that we are of the view that appellee failed to show by sufficient evidence of probative value that the grease that caused him to fall had been on the tie a sufficient length of time that the appellant, in the exercise of ordinary care, should have seen and removed it, and his failure to carry such burden requires a reversal of this cause under the rule applied in Hopson v. Gulf Oil Corp., supra, and the cases there cited.

Appellant's Point 26 is to the effect that the court erred in overruling its objections to Special Issues Nos. 2, 3 and 4 to the effect that such issues were in the nature of a general charge in that they did not confine the jury in its consideration to the time, place and circumstances of plaintiff's acci-

dent, and were a multiple submission of the plaintiff's theory of recovery.

Appellant's Point 27 asserts the same error to Special Issues Nos. 5, 6 and 7.

Appellant's Point 28 asserts the same error to Special Issues Nos. 8, 9 and 10 in the same manner.

Appellant's Point 29 asserts the same error to Nos. 11, 12 and 13 in the same manner.

█ We are in accord with this view, and the court's failure in this behalf was prejudicial to appellant. There was much testimony submitted as to the mud, slush, oil and water between the ties, yet none of these conditions had any causal connection with appellee's fall. Appellee's testimony is direct and positive and to the effect that the piece of grease on the end of the tie covered by a film of dust was the cause of his fall, and there are no facts or circumstances in the record tending to discredit or impeach his testimony in this behalf. See Dunlap v. Wright, Tex.Civ.App., 280 S.W. 276, point 6, page 279; Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, point page 217, 51 S.Ct. 453, point page 456, 75 L.Ed. 983. See also Springfield Fire & Marine Ins. Co. v. Wm. Cameron & Co., Tex.Civ.App., 96 S.W.2d 788, 789, points 2 and 3, no writ history; and Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772, points 1–4, no writ history; also, Heiner v. Homeland Realty Co., Tex.Civ.App., 100 S.W.2d 793, points 3–5, no writ history. Under this state of the record, one ultimate ground of recovery is presented and it should have been submitted in accord with the rule announced in the Hopson case, supra. See also Panhandle & S. F. Ry. Co. v. Miller, Tex.Civ.App., 44 S.W.2d 790, points 2–3, no writ history; Gulf States Utilities Co. v. Dillon, Tex.Civ. App., 112 S.W.2d 752, point 5, no writ history; Harbin v. City of Beaumont, Tex. Civ.App., 146 S.W.2d 297, writ dis. cor. judg.

It is true that the jury in its verdict found that appellee in stepping on the end of the tie was not negligent, and further found that appellee's stepping on the end of the tie as he crossed the track was not the sole proximate cause of his fall and injuries (which finding is in irreconcilable conflict with the undisputed record), but notwithstanding these findings of the jury it is our view that under the record here made that defendant had the burden of showing that appellant knew that the grease that caused appellee to fall was on the tie or that it had been there for such period of time that in the exercise of ordinary care appellant should have discovered it and removed it. This view we believe to be in accord with the Hopson case. Whether the evidence is sufficient to tender to the jury the above issues is not free from doubt, but as we understand the Hopson case, it is our duty to remand it.

We are of the further view that our Supreme Court's discussion in the Hopson case on pages 355–358 of 237 S.W.2d is sufficient to guide the court in its charge on another trial. See also Rule 277, Texas Rules of Civil Procedure.

Notwithstanding the fact that it is our view that this cause should be reversed and remanded, we believe it is our duty to discuss Points 30 and 31.

█ Appellant's Point 30 is to the effect that the court erred in refusing to let the defendant's witness Groves testify that he had observed the activities around this outbound engine house track for more than 20 years and had never seen nor heard of any person getting hurt while crossing the track.

█ We have considered this assignment very carefully and under the state of the record we do not believe it presents reversible error, although it was offered in rebuttal. We are of the view that the conditions of the tracks of appellant at the time and place and immediately prior to the injury is relevant and pertinent. In Missouri, Kansas & Texas R. Co. v. Johnson, 92 Tex. 380, 48 S.W. 568, point page 569, we find this general statement of the rule which we

believe is applicable to the condition of the tracks where appellee was injured. That statement is: "* * * when the question is whether or not a person has been negligent in doing, or in failing to do, a particular act, evidence is not admissible to show that he has been guilty of a similar act of negligence, or even habitually negligent upon a similar occasion."

This rule was applied and explained by our Supreme Court in Dallas Railway & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017. See discussion under Point 2, 227 S.W.2d page 1020.

■■■ Point 31 is to the effect that the trial court erred in refusing to allow the appellant to introduce evidence of the deductions for Federal Income Tax withheld from appellee's monthly salary in rebuttal to his evidence of his gross salary per month and per year on the issue of damages.

Appellant says: "If the jury made its award on the basis of the testimony of plaintiff's gross earnings, then plaintiff made a profit from his injuries, because the award made by the jury is tax exempt. Internal Revenue Code, 26 U.S.C.A. § 22(b) (5). Thus, he received $59,971 tax free. Had he not been injured and earned this amount, he would have paid several thousand dollars income tax."

In support of its contention it cites: Billingham v. Hughes, 1 K.B. 643 [1949] 9 A.L.R.2d 311; Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497; Dempsey v. Thompson, 1952, 363 Mo. 328, 251 S.W.2d 42; DeVito v. United Air Lines, D.C., 98 F.Supp. 88; Phillips v. Phillips, Mo.App., 219 S.W.2d 249; Pennock v. Texas Builders' Supply Co., Tex.Civ.App. 1916, 193 S.W. 760; Smith v. Pennsylvania R. Co., Ohio App., 99 N.E.2d 501; Southern Pacific Co. v. Guthrie, 9 Cir., 180 F.2d 295; Id., 9 Cir., 186 F.2d 926; Stokes v. United States, 2 Cir., 144 F.2d 82; Sunray Oil Corp. v. Allbritton, 5 Cir., 188 F.2d 751; 13 Tex.Jur. p. 73; 13 Tex.Jur. pp. 386–403; U.S.C.A. Title 26, § 22(b) (5); Wether-

bee v. Elgin, Joliet & Eastern Ry. Co., 7 Cir., 191 F.2d 302. We have considered each of these cases very carefully and while they are persuasive to some extent, we do not believe that we should follow them for reasons hereinafter briefly stated.

First of all, there is no statutory provision authorizing such deduction and we do not find any Texas case that is directly in point and the appellant has so stated in its brief. Stokes v. United States, 2 Cir., 144 F.2d 82, seems to be against its contention. On page 87 of 144 F.2d, points 4–5, we find this statement: "We see no error in the refusal to make a deduction for income taxes in the estimate of libellant's expected earnings; such deductions are too conjectural."

In reply appellee says: "These withholdings do not reflect the actual tax the employee must pay. Refunds are obtained because of differing numbers of dependents, loss incurred, charitable contributions made, deductible expenses allowed, etc. Further, the tax is based on a sliding scale, the more deductions, losses, contributions and expenses a taxpayer has, the lower are his taxes. When the employee reaches 65 he has additional tax exemptions, as does his wife at that age, and additional deductions are allowed for medical expenses. With all of these variations it has to be further complicated by the fact that Congress may change the tax schedule and rates from year to year. No possible estimate of future tax liability on any given income can be estimated." We are in accord with this view. Appellee cites Southern Pac. Co. v. Guthrie, 9 Cir., 186 F.2d 926; Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497; Stokes v. United States, 2 Cir., 144 F.2d 82; Cole v. Chicago, St. P., M. & O. Ry. Co., D.C., 59 F.Supp. 443; Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621; Missouri, K. & T. Ry. Co. v. Lynch, 40 Tex.Civ.App. 543, 90 S.W. 511.

The 9th Circuit Court in Southern Pacific Co. v. Guthrie, supra, in discussing the question here presented, said [186 F.2d 927]: "We think the court's view that the

net take home pay, after taxes, would represent the actual loss, is correct; but we are now convinced that we cannot tell how much this would be. Under the tax law then in force, he could look forward to an additional exemption after age 65, and because he was married, the split income features of the law would give two additional exemptions when his wife reached 65, something about which we cannot tell."

We think the statement of the rule in Majestic v. Louisville & N. R. Co., supra, is in accord with the reasoning of the foregoing rule. See Point 14 on page 627 of 147 F.2d.

In Billingham v. Hughes, 1 K.B. [1949] 643, 9 A.L.R.2d 312, syl. 6, we find this statement: "Though the principle has always been to seek to arrive at the pecuniary loss of the individual, the practice in England has consistently been not to have regard to income tax in the assessment of damages."

Our view is that the rule announced by the 9th Cir.Ct. in Southern Pacific Co. v. Guthrie, supra, is perhaps the one that should be followed. This rule was followed by the 2nd, 6th and 8th Circuit Courts, as shown by the above citations. The Supreme Court of the State of Missouri, in a well-considered opinion in Dempsey v. Thompson, 363 Mo. 328, 251 S.W.2d 42, followed the rule announced by the 9th Cir. Ct. in Southern Pac. Co. v. Guthrie, supra. It further held in effect that the defendant (on request) would be entitled to an instruction that any amount awarded plaintiff would not be subject to Federal Income Tax. See Points 1–4, 251 S.W.2d page 45. We are in accord with this view.

Because of our action in reversing and remanding this cause, it is our view that no useful purpose would be gained by a discussion of appellant's other points for the reason that they may not arise on another trial.

Accordingly, this cause is reversed and remanded.

McDONALD, Chief Justice (dissenting).

*This opinion (other than minor changes made necessary in transforming it into a dissent) was initially prepared to be the opinion of the court in this case.*

This appeal is from a judgment favorable to appellee, as plaintiff, in an action under the Federal Employers' Liability Act, 45 U.S.C.A. § 51.

Appellee, a locomotive engineer employed more than 31 years by appellant Railway Company, was injured on 3 August, 1951, when he fell backward while crossing the outbound engine house tracks in the Ennis, Texas, yards of appellant, striking his back on the steel rail of the track. At the time of his injury appellee was performing his work as an engineer oiling the engine he was to operate that day.

Both appellee and appellant were engaged in interstate commerce as defined by the Federal Employers' Liability Act.

Appellee brought his suit, alleging that the appellant was negligent in failing to provide a safe place for him to work under the circumstances in that appellant: 1) failed to fill up with gravel or shell the area around the tracks to a safe depth at least covering all of the ties and area between the walkway on either side of the tracks; 2) failed to warn appellee of the existence of oil and grease upon the tracks, ties and surrounding area where he was required to work; 3) failed to keep the ties, rails and tracks of the outbound engine house tracks where plaintiff was required to work free of all grease and other foreign substance; 4) permitted oil and grease to drop upon the ends of ties on said tracks, when the same would become hidden by dust and sand and not discernible to the eye of a person of ordinary prudence acting in the exercise of ordinary care.

Defendant answered by general denial; a plea of unavoidable accident; specific allegations of contributory negligence; the exercise of ordinary care on its part; and the lack of knowledge of the existence of oil and grease on the tracks.

Trial was to a jury, which found, in response to special issues submitted: 1) that appellee sustained injuries while working for appellant; 2) that appellant failed to provide a reasonably safe place for appellee to work on the occasion in question; 3) that such failure was negligence and was a proximate cause of appellee's injuries; 4) that the appellant permitted oil and grease to drop on the ends of ties in and around the outbound engine house tracks prior to August 3, 1951; 5) that such action was negligence and a proximate cause of appellee's injuries; 6) that appellant failed to keep the ties and tracks free of all grease and water; 7) that such action was negligence and was a proximate cause of appellee's injuries; 8) that appellant failed to fill the space between the ties, walkway and tracks to make such place reasonably safe to walk on; 9) that such failure was negligence and a proximate cause of appellee's injuries. 10) The jury awarded appellee $57,971 for his injuries. All issues on contributory negligence and unavoidable accident were resolved by the jury against the appellant.

Appellant made Motion for New Trial, which was overruled, and now appeals to this court on 32 Points of Error, but which present only five basic contentions for determination by this court, to-wit: 1) that there is no evidence of any negligent act or omission proximately causing appellee's injuries; 2) that the Special Issues are in the nature of a general charge and are repetitious; 3) that evidence of safety history in the past was improperly refused admission; 4) that evidence of Federal Income tax withholdings on appellee's salary was improperly refused admission; 5) that the verdict of the jury is excessive.

Points 1 through 25 present appellant's primary contention that there is no evidence of *any negligent act or omission proximately causing plaintiff's injuries.*

Appellant contends that the presence of oil, water and grease on the outbound tracks at the Ennis yards is a condition which is just incidental to railroading; which is not preventable; and that the law does not require a railway to use more than reasonable care to clean up such condition. There is no eyewitness testimony as to how the particular piece of grease upon which appellee slipped got on the track, *but* all witnesses agree that it was probably thrown from an engine which had been greased. The testimony reflected that it is necessary to lubricate the engines and that it is inevitable that some of the grease will be forced out of the engine, and would drop off during its operation.

Appellant contends that since appellee testified that he slipped on a certain piece of grease, that the issues submitted and findings made by the jury are too broad and should have been confined to negligence for permitting this *certain* piece of Alemite grease to fall on the track. Appellant contends that the squeezing out of the Alemite grease from locomotives is continuous—is incidental to railroading—and that the appellant could have done nothing short of quitting business as a railway to prevent the piece of grease upon which appellee stepped from falling from some locomotive onto the track. It is further contended that there is *no* evidence to justify a jury finding that defendant was negligent in allowing the grease to fall upon the end of the tie, and that there is no evidence to show that the Alemite grease had been on the track long enough for appellant to discover and remove the same, in order for it to be guilty of negligence.

This is a "Master and Servant" case brought under the Federal Employers' Liability Act. A review of the evidence reflects that on 3 August 1951 appellee was readying appellant's engine for a run. In order to oil the engine he had to cross the tracks to the rear of the engine. He picked his way across a tie, stepping on the dry places that were free of oil and grease. When he stepped on the end of a tie his feet went out from under him and he fell, striking his back on the steel rail. The tracks were covered with oil, water and grease, mud and slush. Employees had to pick their way across the track by walking on what appeared to be dry spots. The appellant, through its Superintendent and

Master Mechanic, had known of the condition long prior to appellee's injury. Oil got on the tracks by discharge of oil in engines being readied, and by fuel oil tank overflow when they were being filled. Grease was put on the tracks and ties by dropping off engines that had been greased with pressure guns at the round house. Defendant's employees would put too much grease in the fittings, causing grease to squirt out of the joints which later dropped off. The excess grease could have been wiped off before the engines left the round house, which was not done. The space between the ties was seldom cleaned up. Only one man did any work on this track and he only filled holes along with doing his other work of walking 20 or 30 miles of track daily. The area between the walkway and between the ties could have been concreted to give better footing. The area could have been improved by placing fresh sand and gravel on the tracks. This was done infrequently. Grease that fell from the engines could have been removed after each engine departed. Several years previously a man had been assigned to constantly clean up the area. It was much better then.

Section 51, Title 45 of the United States Code, as amended 11 August 1939, 45 U.S.C.A. § 51, provides: "Every common carrier by railroad while engaging in commerce between any of the several States, * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its * * * track, roadbed, * * * or other equipment."

Appellee comes squarely within this statute which places the duty on the appellant to furnish appellee a safe place to work with respect to its tracks and right of way, where performance of duty necessitates his use thereof.

Owing appellee the duty of providing a safe place to work required appellant to exercise ordinary care to see that the oil, water and grease would not remain as a hazard. It required appellant to keep the space between the ties filled up so that it could be walked on safely. To fail to do so would be negligence. If the area had been in good condition appellee would not have been required to walk on the ties and would not have fallen on the grease. The evidence clearly showed that the ties and track could have been kept free of oil and grease. It had previously been so kept during the time when a Mr. Prince was round house foreman. The engines could have been wiped to prevent dropping of grease; additional sand spread; and steam and water washes employed. I believe that the jury's findings are more than amply supported by the evidence, and more especially in view of the written warnings that had been sent to appellant's Superintendent and Master Mechanic.

In an appeal from a judgment favorable to an injured employee under the Federal Employers' Liability Act, *if the employee's allegations of negligence are supported by any substantial evidence* when considered in the light most favorable to the employee—and together with all inferences which may reasonably be drawn therefrom —then an appellate court should not reverse the case. See Waddell v. Chicago & E. I. R. Co., 7 Cir., 142 F.2d 309.

The Waddell case, supra, affirmed recovery for an injured employee of the railway under Federal Employers' Liability Act where the injuries were sustained when a motor car was derailed at a crossing because the space between the planking and the rails at a highway crossing became filled up with rocks, dirt, etc. The 7th U.S. Circuit Court of Appeals held that the above facts constituted a failure to provide the employee a safe place to work as required by the Act.

In an action by an injured employee brought under the Federal Employers' Liability Act, the 8th U.S. Circuit Court of Appeals held in determining the sufficiency of the evidence to support a finding of negligence, that since the jury in the trial court

found for the plaintiff, all conflicts in the evidence must be resolved against the defendant—and that the plaintiff is entitled to the benefit of such favorable inferences as the jury might reasonably have drawn therefrom. In that case the court held that a railway crossing plank which protruded above the ground, and over which a switchman tripped and fell, causing injuries, constituted a "defect" in the railway premises within the meaning of the Act which required the railway to provide a safe place for switchman to perform his duties. Chicago, Great Western Ry. Co. v. Peeler, 140 F.2d 865.

The 3rd U.S. Circuit Court of Appeals, in a case brought under the Federal Employers' Liability Act, wherein an employee was injured as the result of tripping on a protruding metal plate placed over the track to make a solid crossing, held that it was the duty of the railroad under the Act to maintain its tracks in a safe condition where employees were required to cross the tracks. The court reversed a directed verdict for defendant, and said that under the facts, it was a question for the jury as to whether defendant be guilty of negligence and liable for the employee's injuries. Shiffler v. Pennsylvania R. Co., 176 F.2d 368.

The 4th U.S. Circuit Court of Appeals, in passing on the case of an injured brakeman, brought under the Federal Employers' Liability Act, said that liability is not dependent upon a prevision of the precise event, and that it is sufficient if some injury may be reasonably expected unless precaution is taken. The court then stated that it was proper for the trial judge to submit to the jury the question whether the defendant railway had performed the duty of exercising reasonable care to furnish the plaintiff employee a reasonably safe place to work. Virginian Ry. Co. v. Staton, 84 F.2d 133.

Applying the rules announced by the authorities cited to the evidence in the case at bar, I come to the inescapable conclusion that there is not only *ample, but abundant* evidence of negligence supporting each of the findings of the jury; and it is submitted that appellant's Points of Error 1 through 25 should be overruled.

In Points of Error 26 through 29 appellant complains of Special Issues 2 through 13 submitted by the Trial Court, and contends that they were all in the nature of a general charge, did not confine the jury to the time, place, and circumstances of plaintiff's accident, allowed the jury to speculate, and that all four basic issues actually constituted one ground of recovery.

With appellant's contentions I cannot agree. Appellant failed to raise the matters complained of in the above Points in its Motion for New Trial in the Trial Court. Further, the only issue submitted that could possibly be in the nature of a general charge is No. 2. Should that be true, the same is rendered harmless in view of the other and distinct separate findings of negligence on which the Trial Court correctly rendered judgment. See Rule 434, T.R.C.P.; Dofner v. Branard, Tex. Civ.App., 236 S.W.2d 544. Special Issues 5, 8 and 11 were pleaded by appellee and each is supported by ample evidence. I do not believe that appellee has cast his whole cause of action on the failure of defendant to remove one piece of Alemite grease. However, if that position be taken—which I think it cannot—the findings of the jury and the evidence still are ample and sufficient to uphold the judgment. The piece of Alemite grease was only one of many circumstances that led to appellee's fall and injuries, which were pleaded as specific elements of negligence and separately submitted.

The majority opinion, 263 S.W.2d on page 586 et seq., cites J. R. Watkins Co. v. King, Tex.Civ.App., 83 S.W.2d 405, and other cases to the effect that a litigant having admitted positive facts which, if true, would defeat his right to recover, is conclusively bound by such admission.

Mr. Pool didn't testify to something which would *defeat* his right of recovery. He testified, as best he could, as to how the accident happened. He said that he slipped.

He said that after he had slipped, when he looked around he discovered the thing upon which he slipped, which was a piece of grease three inches long, etc., covered by dust. It would follow that this testimony supports the findings of the jury.

Why, certainly Mr. Pool slipped on one certain piece of grease. For him to have slipped at all he had to slip on some specific something. In this case it was one piece of grease. If there were many pieces of grease in and about the area and Mr. Pool slipped, he had to slip on some certain one, unless they were close enough together that his foot could cover more than one piece of grease. He had to slip on one piece of grease, and that is just what he did. He slipped on the one he testified about. The fact that he slipped on one piece of grease certainly cannot be said to *not* be one of the pieces of grease found by the jury in answer to the special issues to have been permitted by the railroad to be on the track.

The majority opinion in this case cites Hopson v. Gulf Oil Corporation, 150 Tex. 1, 237 S.W.2d 352, 353, as authority for reversing this case. It seems to rely on the Hopson case as authority for the proposition that the court should have charged on the specific piece of grease that Pool slipped on, and then given an issue inquiring as to whether or not this specific grease had been on the track long enough for the railroad, in the exercise of reasonable care, to have discovered and removed it. The majority opinion, of course, ties Mr. Pool down to this one piece of grease, by holding that under J. R. Watkins Co. v. King, supra, since he testified that he slipped on a certain piece of grease, that he was conclusively bound for all purposes to this one particular piece of grease.

On careful reading of the Hopson case it is evident that it does not support the majority opinion, but to the contrary, actually supports the view set forth in this dissent.

The Hopson case does require the submission of an issue inquiring whether or not the specific piece of grease that Hopson slipped on had been on the deck for a sufficient length of time to have been, in the exercise of ordinary care, discovered and removed; but there are two important differences between the Hopson case and the case at bar, as pointed out by the court in the Hopson case on pages 357 and 358 of 237 S.W.2d, viz.: 1) In the Hopson case there was no evidence whatsoever that the defendant knew that the grease was on the deck. In the case at bar the defendant railroad knew that oil and grease were on the ends of the ties because the evidence reflects that there were at least 4 letters written to the railroad telling them of this condition. Knowing of the existence of the hazard involved, it was certainly not necessary that a special issue be submitted inquiring as to whether or not the grease had been on the tie ends long enough to have been discovered and removed. 2) Further, in the Hopson case there was no evidence whatsoever of the unsafe condition, other than the specific piece of grease upon which Hopson slipped. In the case at bar, taking away the specific grease upon which Pool slipped, there is abundant evidence to the effect that the premises were not a safe place in which to work.

Since, in the case at bar, we have the two important elements not present in the Hopson case, to-wit: 1) that the defendant knew of the existence of the hazard which caused the injury; and 2) there was much evidence of an unsafe condition in the area other than the specific piece of grease upon which Pool slipped, it is submitted that the Hopson case supports the contentions of this dissenting opinion.

The case at bar arose from a condition and situation of long standing—about which there is no controversy whatsoever as to notice to the appellant of the existence thereof. According to the reasoning of the majority opinion—a defendant in a criminal case charged with murder by shooting the deceased with a shotgun, should be acquitted, if the State could not prove which pellet from the blast of the shotgun hit the deceased. Of course that is nonsense. It is hypertechnical to say that under the record in the case at bar

that Pool should be required to prove notice as to a specific piece of grease. Under the record in this case the appellant had abundant notice of the condition (including the specific piece of grease) which caused the appellee's injury.

It is submitted that Points of Error 26 through 29 should be overruled.

Point of Error 30 is levelled at the refusal of the Trial Court to admit testimony that a witness had observed activities around the scene of the accident for more than 20 years, and had never seen or heard of any person getting injured.

It is my view that evidence of lack of previous accidents to show absence of negligence, or to prove a safe condition, is inadmissible. See Texas & N. O. Ry. Co. v. McNeill, Tex.Civ.App., 270 S.W. 1038. It is submitted that Point of Error 30 should be overruled.

Point of Error 31 complains of the refusal of the Trial Court to permit appellant railway to introduce evidence of Federal Income Tax deductions withheld from appellee's salary, in rebuttal to appellee's evidence of gross salary, on the issue of damages.

It is my view that as withholdings do not reflect the actual tax an employee must pay; since refunds are obtained because of differing numbers of dependents, losses incurred, contributions made and expenses allowed; that the evidence is too speculative and conjectural to be admissible. See Southern Pacific Co. v. Guthrie, 9 Cir., 186 F.2d 926; Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497; Stokes v. United States, 2 Cir., 144 F.2d 82. Further, there is no more reason to admit evidence of tax withholdings than there would be to admit evidence that the employee was a tither and paid out 10% of his salary to his Church—or that he had certain other fixed expenses which would render his net or take home salary much lower.

The justice of the rule is, that damages wrought by a wrongdoer are measured by the whole loss. The party injured is entitled to recover for all the loss inflicted, and the wrongdoer may not take advantage of income tax withholdings, Church tithes, or any other relation that may exist between the injured party and some third party. See Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621. It is submitted that Point of Error 31 should be overruled.

Appellant's 32d and last Point of Error complains that the sum of $57,971 awarded as fair compensation for injuries sustained by the appellee is so manifestly excessive as to indicate improper motive on the part of the jury.

It is my view that appellant's Point is too general and does not specify on what basis the jury engaged in improper motives in rendering the award that it did, and for such reason should be overruled. See Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407; Texas Interurban Ry. v. Hughes, Tex.Com. App., 53 S.W.2d 448.

Further to the above, however, I feel that the evidence amply supports the award. The evidence, briefly, reflects that appellee earned $5,493.85 in 1950; the injury occurred 3 August 1951 and for the first 7 months of 1951 he earned $4,299.05. Because of seniority and the introduction of Diesel locomotives, his future earnings would be more. He cannot work as an engineer in the future. Taking his loss of earnings at $600 per month for the 12 expected remaining years of his life and discounting same at 3%, his loss of earnings alone would be $64,577.12. The jury was instructed that pain and mental anguish were proper elements for them to consider in answering the damage issue. In view of the evidence, I cannot say that the award is excessive or that it indicates improper motives. See Thompson v. Brown, Tex.Civ.App., 222 S.W.2d 442, and cases there cited.

It is submitted that Point 32 should be overruled.

Finding no reversible error, it is my earnest conviction that the judgment of the Trial Court should be affirmed, for which reason I respectfully dissent.